## CHESAPEAKE AND OHIO RAILWAY COMPANY *v.* KENTUCKY.

**ERROR TO THE COURT OF APPEALS OF THE STATE OF KENTUCKY.**

No. 103.   Argued November 13, 14, 1900.—Decided December 3, 1900.

The separate coach law of Kentucky, being operative only within the State, and having been construed by the Supreme Court of that State as applicable only to domestic commerce, is not an infringement upon the exclusive power of Congress to regulate interstate commerce.

THIS was a writ of error to review the conviction of the Railway Company for failing to furnish separate coaches for the transportation of white and colored passengers on the line of its road, in compliance with a statute of Kentucky enacted May 24, 1892, c. 40, the first section of which reads as follows:

"§ 1. Any railroad company or corporation, person or persons, running or otherwise operating railroad cars or coaches by steam or otherwise, on any railroad line or track within this

State, and all railroad companies, person or persons, doing business in this State, whether upon lines of railroad owned in part or whole, or leased by them; and all railroad companies, person or persons, operating railroad lines that may hereafter be built under existing charters, or charters that may hereafter be granted in this State; and all foreign corporations, companies, person or persons, organized under charters granted, or that may be hereafter granted, by any other State, who may be now, or may hereafter be, engaged in running or operating any of the railroads of this State, either in part or whole, either in their own name or that of others, are hereby required to furnish separate coaches or cars for the travel or transportation of the white and colored passengers on their respective lines of railroad. Each compartment of a coach divided by a good and substantial wooden partition, with a door therein, shall be deemed a separate coach, within the meaning of this act, and each separate coach or compartment shall bear in some conspicuous place appropriate words in plain letters indicating the race for which it is set apart."

The second section requires such companies to make no difference or discrimination in the quality, convenience or accommodations in such coaches; and the fifth provides that conductors "shall have power, and are hereby required to assign to each white or colored passenger his or her respective car, or coach, or compartment, and should any passenger refuse to occupy the car, coach or compartment to which he or she might be assigned by the conductor or manager, the latter shall have the right to refuse to carry such passenger," and may put him off the train. The seventh section contains an exception of employés of railroads, or persons employed as nurses, or officers in charge of prisoners.

The indictment followed the language of the statute above quoted. The defendant demurred upon the ground that the law was repugnant to the Constitution of the United States, in that it was a regulation of interstate commerce. The demurrer was overruled, and the case tried before a jury, which found the defendant guilty, and fixed its fine at five hundred dollars. The case was carried by appeal to the Court of Appeals, and

the conviction affirmed.   The court delivered a brief opinion to the effect that its judgment was concluded by the case of the *Ohio Valley Railways' Receiver* v. *Lander*, 47 S. W. Rep. 344.

*Mr. John T. Shelby* for plaintiff in error.   *Mr. H. T. Wickham* was on his brief.

No appearance for defendant in error.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

This case turns exclusively upon the question whether the separate coach law of Kentucky be an infringement upon the exclusive power of Congress to regulate interstate commerce. The law in broad terms requires all railroad companies operating roads within the State of Kentucky, whether upon lines owned or leased by them, as well as all foreign companies operating roads within the State, to furnish separate coaches or cars for the travel or transportation of white and colored passengers upon their respective lines of railroad, and to post in some conspicuous place upon each coach appropriate words in plain letters indicating the race for which it is set apart.

Of course, this law is operative only within the State.   It would be satisfied if the defendant, which operates a continuous line of railway from Newport News, Virginia, to Louisville, Kentucky, should take on its westward bound trains a separate coach or coaches for colored people at its first station in Kentucky, and continue the same to Louisville; and upon its eastward bound trains take off such coach at the same station before leaving the State.   The real question is whether a proper construction of the act confines its operation to passengers whose journeys commence and end within the boundaries of the State, or whether a reasonable interpretation of the act requires colored passengers to be assigned to separate coaches when traveling from or to points in other States.

Similar questions have arisen several times in this court.   In *Hall* v. *De Cuir*, 95 U. S. 485, 489, an act of the general as-

sembly of Louisiana prohibited common carriers of passengers within that State from making any rules or regulations discriminating on account of race or color. Plaintiff took passage upon a steamboat up the river from New Orleans to a landing place within the State, and, being refused accommodations on account of her color in the cabin especially set apart for white persons, brought an action under the provisions of this act. The vessel was engaged in trade between New Orleans and Vicksburg, Mississippi, and defendant insisted that the act was void as a regulation of commerce between these States. The state court held it to be constitutional. This court held "that while the act purported only to control the carrier when engaged within the State, it must necessarily influence his conduct to some extent in the management of his business throughout his entire voyage. His disposition of passengers taken up and put down within the State, or taken up within to be carried without, cannot but affect in a greater or less degree those taken up without and brought within, and sometimes those taken up and put down without. A passenger in the cabin set apart for the use of whites without the State must, when the boat comes within, share the accommodations of that cabin with such colored persons as may come on board afterwards, if the law is enforced."

In *Louisville &c. Railway Company* v. *Mississippi*, 133 U. S. 587, 591, an act of the legislature of Mississippi required almost in the terms of the Kentucky act that "all railroads carrying passengers in this State . . . shall provide equal, but separate, accommodations for the white and colored races, by providing two or more passenger cars for each passenger train, or by dividing the passenger cars by a partition, so as to secure separate accommodations." The road was indicted for a violation of the statute in failing to provide separate accommodations for the two races. It will be observed that it was not a civil action brought by an individual to recover damages for being compelled to occupy one particular compartment, or for being prevented from riding on the train; but in that case, as in this, the prosecution was public. As the Supreme Court of Mississippi had held that the statute applied solely to commerce within the State, 66 Miss. 662, that construction was accepted as conclu-

sive here; and being a matter respecting commerce wholly within the State, and not interfering with commerce between the States, there was obviously no violation of the commerce clause of the Federal Constitution. Said Mr. Justice Brewer, in delivering the opinion of this court: "So far as the first section is concerned, (and it is with that alone we have to do,) its provisions are fully complied with when to trains within the State is attached a separate car for colored passengers. This may cause an extra expense to the railroad company; but not more so than state statutes requiring certain accommodations at depots, compelling trains to stop at crossings of other railroads, and a multitude of other matters confessedly within the power of the State. No question arises under this section as to the power of the State to separate in different compartments interstate passengers, or to affect, in any manner, the privileges and rights of such passengers. All that we can consider is, whether the State has the power to require that railroad trains within her limits shall have separate accommodations for the two races. That affecting only commerce within the State is no invasion of the powers given to Congress by the commerce clause."

In *Plessy* v. *Ferguson*, 163 U. S. 537, the petitioner Plessy had engaged and paid for a first-class passage on the East Louisiana Railway from New Orleans to Covington in the same State, took possession of a vacant seat in the coach where white passengers were accommodated, and was ejected therefrom under the separate coach law of Louisiana, which was practically in the same terms as the statute of Kentucky under consideration. Upon being subjected to a criminal charge, he applied for a writ of prohibition upon the ground of the unconstitutionality of the act. The Supreme Court of Louisiana held the law to be constitutional and denied the prohibition. On writ of error from this court, it was held that no question of interference with interstate commerce could possibly arise, since the East Louisiana Railway was purely a local line, with both its termini within the State of Louisiana. Indeed, the act was not claimed to be unconstitutional as an interference with interstate commerce, but its invalidity was urged upon the ground that it abridged the privileges or immunities of citizens, deprived the

petitioner of his property without due process of law, and also denied him the equal protection of the laws. His contention was overruled, and the statute held to be no violation of the Fourteenth Amendment.

As already stated, the Court of Appeals of Kentucky did not discuss the constitutionality of the act in question, but held itself concluded by its previous opinion in the *Lander* case. That was an action instituted by Lander and his wife against the receiver of the Ohio Valley Railway, running from Evansville, Indiana, to Hopkinsville, Kentucky. Plaintiff's wife, who was joined with him in the suit, purchased a first-class ticket from Hopkinsville to Mayfield, both within the State of Kentucky; took her place in what was called the "ladies' coach" and was ejected therefrom by the conductor and assigned a seat in a smoking car, which was alleged to be small, badly ventilated, unclean, and fitted with greatly inferior accommodations. It was held by the Court of Appeals that the decisions of this court in *Louisville, New Orleans &c. Railway* v. *Mississippi*, 133 U. S. 587, and *Plessy* v. *Ferguson*, 163 U. S. 537, were conclusive of the constitutionality of the act so far as plaintiffs were concerned; and that the mere fact that the railroad extended to Evansville, in the State of Indiana, could in nowise render the statute in question invalid as to the duty of the railroad to respect it. It was urged in that case, as it is in this, that the act undertook to regulate or control as to interstate passengers, and that that portion of the statute was invalid, as being in conflict with the interstate commerce clause of the Constitution; and, further, that the act was inseparable, and, therefore, must all be held invalid. In disposing of this the court observed: "We do not think that such contention is tenable. It seems to us that such contention is in conflict with the decision hereinbefore referred to, (in the Mississippi case,) and also in conflict with the well-settled rules of construction." In winding up its opinion the court made the following observation: "If it were conceded (which it is not) that the statute is invalid as to interstate passengers, the proper construction to be given it would then be that the legislature did not so intend it, but only intended it to apply to transportation within the

State, and, therefore, it should be hold valid as to such passengers. It seems to us that a passenger taking passage in this State, and railroad companies receiving passengers in this State, are bound to obey the law in respect to this matter so long as they remain within the jurisdiction of the State."

This ruling effectually disposes of the argument that the act must be construed to regulate the travel or transportation on railroads of *all* white and colored passengers, while they are in the State, without reference to where their journey commences and ends, and of the further contention that the policy would not have been adopted if the act had been confined to that portion of the travel which commenced and ended within the state lines. Indeed, it places the Court of Appeals of Kentucky in line with the Supreme Court of Mississippi in *Louisville &c. Railway Co.* v. *Mississippi*, 66 Mississippi, 662, which had held the separate coach law of that State valid as applied to domestic commerce. Granting that the last sentence from the opinion of the Court of Appeals, above cited, would seem to justify the railroad in placing interstate colored passengers in separate coaches, we think that this prosecution does not necessarily involve that question, and that the act must stand, so far as it is applicable to passengers traveling between two points in the State.

Indeed, we are by no means satisfied that the Court of Appeals did not give the correct construction to this statute in limiting its operation to domestic commerce. It is scarcely courteous to impute to a legislature the enactment of a law which it knew to be unconstitutional, and if it were well settled that a separate coach law was unconstitutional, as applied to interstate commerce, the law applying on its face to *all* passengers should be limited to such as the legislature were competent to deal with. The Court of Appeals has found such to be the intention of the General Assembly in this case; or at least, that if such were not its intention, the law may be supported as applying alone to domestic commerce. In thus holding the act to be severable, it is laying down a principle of construction from which there is no appeal.

While we do not deny the force of the railroad's argument

in this connection, we cannot say that the General Assembly would not have enacted this law if it had supposed it applied only to domestic commerce; and if we were in doubt on that point, we should unhesitatingly defer to the opinion of the Court of Appeals, which held that it would give it that construction if the case called for it.   In view of the language above quoted from the *Lander* case, it would be unbecoming for us to say that the Court of Appeals would not construe the law as applicable to domestic commerce alone, and if it did the case would fall directly within the *Mississippi* case, 133 U. S. 587.   We therefore feel compelled to give it that construction ourselves, and so construing it there can be no doubt as to its constitutionality.   *Plessy* v. *Ferguson*, 163 U. S. 537.

The judgment of the Court of Appeals is, therefore,

*Affirmed.*

Mr. Justice Harlan dissented.