# 𝔚𝔶𝔱𝔥𝔢𝔟𝔦𝔩𝔩𝔢

IRENE MORGAN v. COMMONWEALTH OF VIRGINIA.

June 6, 1945.

Record No. 2974.

Present, All the Justices.

The opinion states the case.

*Hill, Martin & Robinson* and *Leon A. Ransom*, for. the plaintiff in error.

*Abram P. Staples, Attorney General*, and *M. Ray Doubles, Assistant Attorney General*, for the Commonwealth.

GREGORY, J., delivered the opinion of the court.

The plaintiff in error was found guilty of a violation of section 4097dd of the Virginia Code (Michie), Acts 1930, p. 344, and fined $10 and costs. She attacks the judgment of the lower court upon the ground that the statute does not apply to her because she was an interstate passenger on an interstate bus and, if it does, it is unconstitutional.

The facts, briefly, are as follows: On July 16, 1944, the plaintiff in error, who will be hereinafter referred to as the defendant, was a passenger upon a bus of the Richmond Greyhound Lines, Inc. She was a member of the Negro race, and had purchased a ticket at Hayes Store, in Gloucester county, Virginia, to Baltimore, Maryland. The bus on which she was riding was operated from Norfolk, Virginia, to Baltimore, Maryland. Upon arriving at Saluda, Middlesex county, Virginia, she was sitting in the second seat toward the front from the long seat in the extreme rear of the bus. There were two vacant spaces upon the long rear seat, and six white passengers were standing. The bus driver requested the defendant and her seatmate, another woman of the Negro race, to change their seats and occupy the two vacant spaces on the rear seat. The seatmate attempted to make the change but as she sought to arise she was pulled back by the defendant. The defendant refused to change her seat as requested. The bus driver explained to her the rules and regulations of the company as to seating colored and white passengers on buses, and informed her that he was required to seat white passengers from the front of the bus toward the rear and colored passengers from the rear of the bus forward.

Exhibit "A" sets forth the regulation of the company. It is in this language:

"T-22 RIGHTS RESERVED: This company reserves the right to refuse transportation to any and all persons for the following reasons:

"(c) This company reserves full control and discretion

as to the seating of passengers and the right to change such seating at any time during the trip except on divisions or runs where specific seat reservations are made, in which case, passengers shall retain the seats assigned them unless same be contrary to any laws or governmental regulations."

Upon the refusal of the defendant to change her seat the driver of the bus caused a warrant to be sworn out for her. The sheriff and a deputy boarded the bus with the warrant and requested the defendant to change her seat. The sheriff attempted to read the warrant to her but she snatched it out of his hand and threw it behind the seat. The woman seated beside the defendant moved but the defendant again refused to move, whereupon, the sheriff and his deputy arrested her and took her off the bus. When they attempted to remove her from the bus the defendant struck at the deputy but did not hit him. She kicked the sheriff three times on his leg, and reiterated that she would neither change her seat nor get off the bus. The officers placed her in jail.

In addition to being tried for a violation of sec. 4097dd, she was also tried at the same time for resisting arrest and found guilty upon that charge and adjudged to pay a fine of $100 and costs. She has not sought a writ of error to this judgment. The writ of error here is to the judgment of the court finding the defendant guilty of a violation of section 4097dd.

There are two questions presented by the assignments of error. First, is the statute upon which the defendant was prosecuted, if construed as applicable to a passenger in interstate commerce, constitutional? Second, should the statute upon which the defendant was prosecuted be construed as limited in its operation to passengers in intrastate commerce, and therefore as inapplicable to the defendant?

The decisive questions present only questions of law. It is conceded by counsel for the defendant that the facts as found by the court below are binding upon the defendant.

Section 4097dd reads as follows:

"Violation by passengers; misdemeanor; ejection.—All per-

sons who fail while on any motor vehicle carrier, to take and occupy the seat or seats or other space assigned to them by the driver, operator or other person in charge of such vehicle, or by the person whose duty it is to take up tickets or collect fares from passengers therein, or who fail to obey the directions of any such driver, operator or other person in charge, as aforesaid, to change their seats from time to time as occasions require, pursuant to any lawful rule, regulation or custom in force by such lines as to assigning separate seats or other space to white and colored persons, respectively, having been first advised of the fact of such regulation, and requested to conform thereto, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not less than five dollars nor more than twenty-five dollars for each offense. Furthermore, such persons may be ejected from such vehicle by any driver, operator or person in charge of said vehicle, or by any police officer or other conservator of the peace; and in case such persons ejected shall have paid their fares upon said vehicle, they shall not be entitled to the return of any part of same. For the refusal of any such passenger to abide by the request of the person in charge of said vehicle as aforesaid, neither the driver, operator, person in charge, owner, manager nor bus company operating said vehicle shall be liable for damages in any court."

In 1930 the General Assembly of Virginia enacted the statute known as Chapter 128, found in the 1930 Acts at pages 343 and 344. The title of the Act is "An Act to provide for the separation of white and colored passengers in passenger motor vehicle carriers within the State; to constitute the drivers of said motor vehicles special policemen, with the same powers given to conductors and motormen of electric railways by general law". The present Code sec. 4097dd is the latter portion of the Act.

The Act provides that all passenger motor vehicles operating under Chapter 161A of the Code shall segregate passengers according to color, and that any carrier failing to comply shall be fined.

The Act also provides that those so operating motor vehicles shall make no difference or distinction in the quality or convenience of the accommodations provided for the two races.

The Act further provides that the driver or operator or other person in charge of any motor vehicle above-mentioned shall have the right, and he is directed, to require at any time when it may be necessary or proper for the comfort or convenience of passengers so to do, to change the designation so as to increase or decrease the amount of space or seats set apart for either race, and that any driver or operator of a bus who shall fail or refuse to carry out the provisions of this section shall be guilty of a misdemeanor.

The Act further provides that the operator of such vehicle shall be a special policeman and have all the powers of a conservator of the peace in the enforcement of the provisions of the Act.

Then follows the latter portion of the Act now known as sec. 4097dd of the present Code (Michie), which has already been quoted.

It is conceded that on the bus upon which the defendant was riding there were provided equal facilities for both races, and that there was no difference or discrimination in the quality or convenience of the accommodations provided for the two races.

The Attorney General has made a motion to dismiss the writ of error, but the ultimate view of the court will render it unnecessary to pass upon that motion.

■ The public policy of the Commonwealth of Virginia, as expressed in the various legislative Acts, is and has been since 1900 to separate the white and Negro races on public carriers. As to railroads, see Acts of 1899-1900, pages 236 and 237, carried in Michie's Code of 1942 as secs. 3962-3968; as to steamboats, see Acts of 1899-1900, page 340, carried in Michie's Code 1942 as secs. 4022-4025; as to electric or street cars, see Acts of 1902-03-04, page 990, carried in Michie's Code 1942 as secs. 3978-3983, and as to motor vehicles see

Acts of 1930, pages 343 and 344, carried in Michie's Code of 1942 as secs. 4097z, 4097aa, 4097bb, 4097cc, and 4097dd.

So far as we are advised no case contesting the validity of any of these segregation Acts as applied to interstate passengers has been previously before this court, or any attempt made to repeal them.

Article 1, sec. 8, clause 3, of the Constitution of the United States provides that Congress shall have the power "to regulate commerce with foreign nations, and among the several states, and with the Indian Tribes". And Article 10 of the amendments to the Constitution of the United States provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people".

Under the tenth amendment there is reserved to the States the right to exercise the police power. The State may enact legislation under the authority of the police power, even though such legislation may incidentally affect interstate commerce.

The Virginia segregation statutes have been enacted under the police power of the State reserved to it in the tenth amendment to the U. S. Constitution.

Unless it is shown that the statute here challenged directly or unreasonably interferes with interstate commerce it is a valid enactment. There is no evidence in this case that the rule of the carrier or the statute under which it was promulgated does so. The burden of proof on this issue rested upon the defendant and she has failed to carry it. *Bourjois* v. *Chapman*, 301 U. S. 183, 57 S. Ct. 691, 81 L. Ed. 1027.

It must be borne in mind that here the carrier is not contending that interstate commerce is unreasonably burdened by the statute. It does not contend that the statute places any added expense upon it or that it is inconvenienced or that it is against peace and good order to separate the races as it does under its rule. In fact the carrier was not even a party to this litigation.

The general rule is that if the enactment which re-quires the segregation of races according to color directly or unreasonably interferes with commerce it is not constitutional. *Hall* v. *DeCuir*, 95 U. S. 485, 24 L. Ed. 547; *McCabe* v. *Atchison, etc., R. Co.*, 235 U. S. 151, 35 S. Ct. 69, 59 L. Ed. 169. But unless the regulation unreasonably burdens commerce it is valid.

In *South Covington, etc., R. Co.* v. *Kentucky*, 252 U. S. 399, 40 S. Ct. 378, 64 L. Ed. 631, it was held that a Kentucky street railway may be required by statute of that State to furnish separate cars or separate compartments in the same car for white and Negro passengers, although its principal business is the carriage of passengers in interstate commerce between Cincinnati, Ohio, and Kentucky cities across the Ohio river. It was held that such a requirement affects interstate commerce only incidentally and does not subject it to unreasonable demands.

It was also held in *Smith* v. *State*, 100 Tenn. (16 Pick.) 494, 46 S. W. 566, 41 L. R. A. 432; *Alabama, etc., R. Co.* v. *Morris*, 103 Miss. 511, 60 So. 11, Ann. Cas. 1915B, 613, and *Southern R. Co.* v. *Norton*, 112 Miss. 302, 73 So. 1, that State statutes providing for separate but equal accomodations for white and colored races on railroads are valid police regulations and that they apply both to intrastate and interstate travel. In these cases comment is made that the Supreme Court has not directly passed upon the validity of such statutes and that the ultimate settlement of the question rests with that court. It is also suggested in the *Morris Case* that until that court decides against the validity of such statutes, the court will be impelled to adhere to the belief that the law is not only beyond criticism from a constitutional standpoint but is also a reasonable and wise exercise of the police power of the State.

There are cases from several States which support the contention that a segregation statute is unconstitutional as respects interstate passengers. See *Hart* v. *State*, 100 Md. 595, 60 A. 457; *Carrey* v. *Spencer*, 72 N. Y. St. Rep. 108, 36

N. Y. S. 886; *Washington, etc., Elec. R. Co.* v. *Waller*, 53 App. D. C. 200, 289 F. 598, 30 A. L. R. 50. See also annotation in 30 A. L. R. at p. 55, where a number of cases are collected.

The defendant places strong reliance upon the case of *Hall* v. *DeCuir*, 95 U. S. 485, 24 L. Ed. 547. That case arose in 1877 under a Louisiana statute enacted in 1869 which required that no regulation of any carrier should make any discrimination on account of the race or color of the passenger. The plaintiff was a member of the Negro race and she sought accommodations on an intrastate journey in Louisiana on a steamboat operated by one Benson, which plied on the Mississippi river between New Orleans, Louisiana, and Vicksburg, Mississippi. She was refused accommodations in the cabin set apart for white persons, and sued Benson for damages as provided in the statute. He maintained that he was engaged in interstate commerce and that the Louisiana statute could have no application to him, and that he could promulgate any rules he desired. The Supreme Court of Louisiana held the statute applicable and that it was not a regulation of interstate commerce. The case was appealed to the Supreme Court of the United States and there reversed, the Court holding that the statute was an unreasonable burden upon interstate commerce and therefore in violation of the Constitution.

The court found as a fact that the Louisiana Act was a direct interference with interstate commerce, while in the case at bar the challenged Act has not been shown nor found to be an interference with interstate commerce.

In the *Hall Case* it is apparent that the Louisiana Act was not enacted in pursuance of the police power of the State, while the Virginia Act was enacted under the police power.

It is also noted that the Louisiana statute prohibited the segregation of the races and that the rule of the carrier required such segregation, while in Virginia our statute not only requires separation of the races on public carriers but

the carrier in this instance has a rule promulgated under the statute providing for the seating of passengers in the bus, and reserving to itself the right to change such seating at any time during the trip.

The Louisiana statute and the rule of the carrier were in direct conflict. To enforce the rule of the carrier would have been to violate the terms of the statute, while to enforce the terms of the statute would have been to violate the rule of the carrier. No such situation exists in Virginia. In the case at bar the rule of the carrier, instead of being at variance with the provisions of the statute, is entirely consistent with it—the rule having been made under the terms of the statute.

There is a conflict in the many cases dealing with State statutes which require the separation of the white and colored races by public carriers. No case from the Supreme Court of the United States has directly considered the issue raised in the case at bar. It is needless for us to refer to all of the cases or to attempt to discuss and distinguish them. Each case must largely depend upon its own facts, and if a statute results in imposing a direct or unreasonable burden upon interstate commerce it should be declared unconstitutional. On the other hand, if it creates no such burden, it is not obnoxious to the Constitution.

In 11 Am. Jur., Commerce, section 8, the rule controlling the division and classification of powers is stated thus:

"The constitutional provision which confers upon Congress the power 'to regulate commerce with foreign nations, and among the several States, and with the Indian tribes' grants all of the authority which the United States has over commerce. The respective powers of Congress and the States under this provision are divided into three fields: (1) That in which the authority of Congress is exclusive; (2) that in which the power of the State is exclusive; and (3) that in which the State may act in the absence of legislation by Congress. The line of division between Congressional and State power over commerce is a question for

judicial decision, depending upon the words of the Federal Constitution. * * "

In *Covington, etc., Bridge Co.* v. *Kentucky*, 154 U. S. 204, 14 S. Ct. 1087, 38 L. Ed. 962, it was held that the adjudications of the Supreme Court of the United States with respect to the power of the States over the general subject of commerce are divisible into three classes: "First, those in which the power of the State is exclusive; second, those in which the States may act in the absence of legislation by Congress; third, those in which the action of Congress is exclusive and the States cannot interfere at all."

In the case at bar the defendant contends that Congress possesses the exclusive power in matters relating to interstate commerce, and that the States cannot act at all, while the Attorney General contends that the case at bar falls within the second class set out in the *Covington Case*, and that the State may act in the absence of legislation by Congress.

It appears that certain members of Congress have attempted to induce Congress to invade the so-called segregation field, but so far without success. On three occasions it has expressly refused to legislate on the subject. On January 5, 1938, Representative Mitchell introduced the following bill in Congress to amend U. S. C. title 49, sec. 3(1). (See H. R. 8821, Congressional Record, Vol. 83, part 1, p. 74):

"It shall be unlawful to segregate any persons traveling as interstate passengers on any carrier subject to the provisions of this Act, or in railroad stations, waiting rooms, rest rooms, lunch rooms, restaurants, dining cars, or in any other accommodations provided for passengers traveling interstate, on account of such passengers' race, color, or religion; and any such discrimination or attempted discrimination shall subject the offending carrier, its officers, agents, servants, and employes, to the penalties hereinafter provided for violations of this Act."

This bill was referred to the Committee on Interstate and Foreign Commerce but was never reported out.

On January 3, 1939, the bill was re-introduced as H. R.

182, (Congressional Record, Vol. 84, part 1, p. 27), and again referred to the same committee. This committee was studying and developing the Interstate Commerce Act, and the Transportation Act of 1940, (Title 49 U. S. C. A., Transportation), was finally enacted, but the bill was not reported out nor were its provisions incorporated in any other measure.

On January 3, 1941, the bill was re-introduced as H. R. 112 (Congressional Record, Vol. 87, part 1, p. 13), and for the third time it was not reported out of committee.

There is now pending in the Committee on Interstate and Foreign Commerce a bill known as H. R. 1925, by which it is again sought to abolish segregation on public carriers. What the fate of this latest attempt will be, is, of course, not known.

This continued refusal of the Congress to legislate in the segregation field demonstrates its desire that the matter be left where it is now; that is, that the several States, under their police power, be permitted to continue to legislate in this field, subject only to the limitation that they shall not directly or unreasonably burden interstate commerce.

The Supreme Court has held that a State may tax interstate commerce even though it increases the cost of doing business. Even interstate business must pay its way. The bare fact that one is carrying on interstate commerce does not relieve him from many forms of State taxation which add to the cost of his business.

In *McGoldrick* v. *Berwind-White Coal Min. Co.*, 309 U. S. 33, 60 S. Ct. 388, 84 L. Ed. 565, 128 A. L. R. 876, Mr. Justice Stone, speaking for the court, said: "Section 8 of the Constitution declares that Congress shall have power * * to regulate commerce with foreign nations and among the several States. * * In imposing taxes for State purposes a State is not exercising any power which the Constitution has conferred upon Congress. It is only when the tax operates to regulate commerce between the States or with foreign nations to an extent which infringes the au-

thority conferred upon Congress that the tax can be said to exceed constitutional limitations". Citing cases.

And again the Justice said: "In few of these cases could it be said with assurance that the local tax does not, in some measure, affect the commerce or increase the cost of doing it. But in them as in other instances of constitutional interpretation so as to insure the harmonious operation of powers reserved to the States with those conferred upon the national government, courts are called upon to reconcile competing constitutional demands, that commerce between the States shall not be unduly impeded by State action and that the power to lay taxes for the support of State government shall not be unduly curtailed".

Thus a State may tax interstate commerce and increase the cost of doing that business. Commerce is bound to be affected and burdened. However, under the case just referred to, as long as the State tax does not infringe the authority conferred upon Congress to regulate commerce among the several States, it is not invalid.

If State taxation statutes are constitutional even though they add to the cost of doing an interstate business, it would certainly seem logical that a segregation statute which is not shown to affect interstate commerce in any way, except perhaps to improve it, would also be valid. If the defendant here and her seatmate had complied with the rule of the carrier and had occupied the rear vacant seats assigned them, then two of the six white passengers could have been seated. Thus complying with the rule of the carrier and the statute not only would not have directly or unreasonably impaired interstate commerce but it would have aided it.

It is conceded that in so far as the commerce clause is concerned the Virginia Act is valid, if restricted in its application to intrastate passengers. It is said that the Act is severable, and we are asked to so hold, and to invalidate it as to interstate passengers.

The language of the statute embraces all motor vehicles and all passengers, both interstate and intrastate. If the

statute were held to be valid as to intrastate passengers and invalid as to interstate passengers, a condition would exist that would adversely disturb the peace and welfare. Then an interstate white passenger could occupy the rear seat with an intrastate Negro passenger, and an interstate Negro passenger could occupy a front seat with an intrastate white passenger. This would tend to confusion and disorder, and in effect, to allow the interstate Negro and white passengers to have the run of the entire bus, while confining the intrastate white and colored passengers to the front and rear of the bus, respectively. The result would be that the Segregation Act in its entirety would effectively be disrupted.

The point raised for the first time in the defendant's reply brief that the Act is not constitutional because it delegates legislative power to a private corporation brings into the case a question not raised in the pleadings in the court below or in the assignments of error or in the petition for the writ of error. It was not an issue in the case, and the attempt to inject it into the case for the first time by asserting it in the reply brief is violative of rule 22 of this court.

However, we do not think there would be any merit in the point if it had been properly raised. The statute, when read in its entirety, clearly demonstrates that no power is delegated to the carrier to legislate and determine what conduct shall be considered a crime. The statute simply describes conditions which must first be found to exist before it becomes applicable. There is no uncertainty about the conditions that must exist before the offense is complete. The statute itself condemns the defendant's conduct as a violation of law and not the rule of the carrier. An interesting and exhaustive annotation on "Permissible Limits of Delegation of Legislative Power" is found in 79 L. Ed. of the U. S. Supreme Court Reports, beginning at page 474, following the case of *Panama Refin. Co.* v. *Ryan,* 293 U. S. 388, 55 S. Ct. 241, 79 L. Ed. 446. At page 496 (79 L. Ed.) the specific point is discussed and the pertinent cases cited. They are: *Whaley* v. *State,* 168 Ala. 152, 52

So. 941, 30 L. R. A. (N. S.) 499; *Samuelson* v. *State*, 116
Tenn. (8 Cates) 470, 95 S. W. 1012, 115 Am. St. Rep. 805,
and *In re O'Neill*, 41 Wash. 174, 83 P. 104, 3 L. R. A.
(N. S.) 558, 6 Ann. Cas. 869.

[11] In Virginia the statute demands equality of treatment
of the white and Negro races by the carriers as well as
equality in the facilities provided by the carriers for them.
A statute which would permit inequalities in these respects
would be invalid. Here the segregation statutes are enforced
against the members of the white as well as against those of
the Negro race. They must be enforced equally and with-
out discrimination against both races. *Davis* v. *Common-
wealth*, 182 Va. 760, 30 S. E. (2d) 700.

We are of the opinion the statute does not result
in a discrimination against either the white or the Negro
race, and that it does no violence to the fourteenth amend-
ment to the U. S. Constitution (see *Plessy* v. *Ferguson*, 163
U. S. 537, 16 S. Ct. 1138, 41 L. Ed. 256).

The silence of Congress on this subject places it
in the "second" category outlined in *Covington, etc., Bridge
Co.* v. *Kentucky, supra*, where the State is allowed to act in
the absence of legislation in this field by Congress. If Con-
gress desires to nullify State segregation statutes as applicable
to interstate passengers it has the power to do so under the
commerce clause. However, until Congress pre-empts this
legislative field by proper enactment the States continue to
have the right to segregate the white and colored races on
public carriers. That Congress probably will not enter this
field is evidenced by the fact that since January 5, 1938,
for more than seven years it has refused to act, though at
each session since then it has had the subject before it and
has been urged to abolish segregation.

Our conclusion is that the statute challenged is a reason-
able police regulation and applies to both intrastate and
interstate passengers. It is not obnoxious to the commerce
clause of the Constitution.

The judgment is affirmed.

*Affirmed.*