# 𝔖taunton

ETHEL NEW v. ATLANTIC GREYHOUND CORPORATION AND
W. N. SMITH.

September 3, 1947.

Record No. 3224.

Present, Hudgins, Gregory, Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*Hill, Martin & Robinson,* for the plaintiff in error.

*Robert D. Morrison, John C. Goddin, John G. May, Jr.,* and *Robert Lewis Young,* for the defendants in error.

SPRATLEY, J., delivered the opinion of the court.

Mrs. Ethel New, a colored woman, instituted this proceeding by notice of motion to recover damages for wrongs and personal injuries, which she alleged were occasioned by reason of an assault and battery committed by the Atlantic Greyhound Corporation and W. N. Smith, in forcibly evicting her from a passenger motor vehicle of the defendant corporation, a common carrier, upon her refusal to occupy a seat assigned to her by the driver of the vehicle. The defendants pleaded not guilty.

The case was tried before a jury, which rendered a verdict in favor of the defendants. A motion for a new trial was overruled. From the judgment entered in accordance with the verdict of the jury, this appeal was taken.

Two questions are presented for our consideration, one, of law,—that is, the validity of a statute,—and, the other, of

fact,—that is, the sufficiency of the evidence to sustain the verdict.

The pertinent and material facts, stated in the light of the jury's verdict, are these:

On the night of June 11, 1944, Mrs. New, sometimes hereinafter referred to as the plaintiff, was travelling as an intrastate passenger on one of the motor busses of the Atlantic Greyhound Corporation, having purchased a ticket from Blackstone, Virginia, to Appalachia, Virginia. The Atlantic Greyhound bus line did not extend to Appalachia, and it was necessary for the plaintiff to travel from Bristol, Virginia, to Appalachia on the bus of another company. When she boarded the bus it was crowded, with passengers standing in the aisle, and she stood up from Blackstone to Lynchburg, Virginia. When the bus stopped at its terminal in Lynchburg to discharge and take on passengers, the bus driver's attention was called to the fact that the plaintiff was sitting on the front seat of the bus. The driver explained to her that there was a rule under which colored passengers were required to sit behind the white passengers, and asked her to move back of the white passengers. She moved to the last aisle seat, being the seat next to a long seat across the whole of the rear of the bus. The driver went into the terminal to check in. On returning to the bus, he again spoke to the plaintiff, asking her to move farther back and sit with three other colored passengers on the five-passenger rear seat, in order that two white passengers standing in the aisle might sit in the seat occupied by her. He explained to her the rule of the company requiring the seating of colored passengers behind white passengers, adding that there was a statute in Virginia to the same effect, and that if she did not exchange seats, he would have to call the police. She refused to move, and told the driver that she had no intention of moving. The driver then called the police, and W. N. Smith, a lieutenant of police of the city of Lynchburg, and Officer Bagby of the same police force responded and came to the bus. Smith talked to Mrs. New

on two separate occasions, endeavoring to persuade her to move to the rear seat and make the seat next to the rear available for the two standing passengers. Smith, in a polite and patient manner, explained to her both the law and the rule of the company. One witness said he "explained the situation very gentlemanly." Unable to get her to exchange seats, she was forcibly led from the bus by Officer Bagby. The incident occupied a period estimated at from thirty minutes to an hour. Mrs. New said she was roughly pulled off the bus by Smith, assisted in part by the driver; but the great weight of the testimony sustained the statement of Smith and others that it was Officer Bagby alone who took her by the arm and led her off the bus, using little force and no more than was necessary under the circumstances of her passive resistance. The testimony of the plaintiff that she told the bus driver and officers that she was sick was contradicted by the police officers, the bus driver, and several of the passengers on the bus.

The quality and convenience of the long back seat to which the plaintiff was asked to move were stated to be equal to those of the seat she occupied. While the back of the long seat was not adjustable, it had the same springs and covering as the other seat. Its windows were not adjustable; but there was a ventilator over its top for the removal of hot air and odors, a device lacking over the other seats.

Mrs. New testified that she suffered some bruises and injuries as a result of her ejection from the bus. She said she was, at that time, three months pregnant. Upon her subsequent arrival at her home in Kentucky, she consulted her physician. On June 18, 1944, she had a miscarriage or abortion. Her physician said that in his opinion, there was a causal connection between the injuries of Mrs. New, as related to him by her, and her subsequent abortion.

Upon the completion of the evidence, after overruling a motion of the plaintiff to strike the evidence of the defendants, the court gave the jury five instructions. The plaintiff objected to instructions numbered one and two, on the

grounds, first, that the bus company had shown no rule or regulation requiring the segregation of passengers on account of race nor informed her of such rule; and, second, that there was no valid statute requiring the separation of colored and white passengers on busses in Virginia. Since the instructions one and two go to the very heart of the case, both as to ascertained facts and the applicable law, we set them out at length:

Instruction No. 1. "The Court instructs the jury that any driver or operator of a motor vehicle engaged in the transportation of passengers, wholly within this state as a common carrier is required by law when it may be necessary or proper for the comfort and convenience of passengers to change the seat designation of a passenger or passengers so as to increase or decrease the amount of the space or seats set apart for either race, but no contiguous seats on the same bench shall be occupied by white and colored passengers at the same time, and the driver or operator of any such vehicle may require any passenger to change his or her seat when it may be necessary and proper for such separation of the races, provided, however, that such driver or operator shall make no difference or discrimination in equality or convenience of accommodations provided for any member of the two races,—that is, no party shall be required to give up a seat for one of poorer quality or convenience in accommodation for such traveling passenger.

"But before any such segregation of passengers shall be had upon any bus operated in intrastate travel in Virginia it is required that there be a rule, regulation or custom of such transportation company in force to such effect, and that the passenger or passengers who are requested to vacate one seat for another shall be advised of the fact of such regulation, rule or custom and requested to conform thereto.

"You are therefore instructed if you believe from the evidence in this case that the plaintiff was seated upon the first cross seat in the rear next to the long seat across the extreme rear of the bus, and that there were vacant seats upon

the extreme rear seat, and that there was in effect a rule, regulation or custom of the company with regard to the allotment of separate space in the bus to the different races, and that she was advised of such rule, regulation or custom and requested and change her seat to the long rear seat in the rear, and that such was necessary and proper for the comfort and convenience of the passengers upon said bus, and that the quality and convenience of the accommodations of the extreme rear seat was equal to that of the seat occupied by the plaintiff, then it was her duty to make such change in seats when being so requested. But if you believe from the evidence in this case that there was no such rule, regulation or custom in force by the defendant company, or that she was not advised of the same by the operator of the bus upon his request to her to vacate her seat, or that the convenience and quality of the accommodation upon the rear seat was not equal to that of the seat she occupied, then she was under no obligation to make such change in seats. And if you further believe that she was ejected when no such obligation existed as herein set forth, then you should find your verdict for the plaintiff.

"However, if you believe from the evidence that she was advised of such rule, regulation or custom, and that the quality and convenience of the accommodation upon the extreme rear seat was equal to that that she then occupied and it was necessary for the comfort and convenience of the passengers upon said bus that such change be made, and she refused to make such change, and was ejected by the use of no more force than was necesary, then you should find your verdict for the defendants."

Instruction No. 2. "The Court instructs the jury that if you believe from the evidence in this case in the light of Instruction No. 1 heretofore read to you that the plaintiff was obligated to change her seat, but unreasonably and stubbornly refused to do so, then the police officers and the company had the right to eject her from the bus if they used no more force than was necessary so to do, and if they

used no more force than was necessary so to do then you should find your verdict for the defendants, but if on the other hand you believe that in the ejection of the plaintiff they used more force than was necesary so to do and ejected her in such a manner as to inflict injuries upon her, then you should find your verdict for the plaintiff."

■ The evidence which we have stated shows that there is no merit in the first objection.

The primary question for our consideration is whether the statute which provides for the separation of white and colored passengers in motor busses, Acts 1930, chapter 128, page 343; Code of 1942 (Michie), sections 4097z, 4097aa, 4097bb, 4097cc, and 4097dd, is valid as to intrastate passengers despite the decision in *Morgan* v. *Commonwealth*, 328 U. S. 373, 66 S. Ct. 1050, 90 L. Ed. 1317, 165 A. L. R. 574. The pertinent portions of the Act are copied in the margin.*

---

*1. " . . . all passenger motor vehicle carriers, operating under the provisions of chapter one hundred and sixty-one-a of the Code of Virginia, shall separate the white and colored passengers in their motor busses and set apart and designate in each bus or other vehicle, a portion thereof, or certain seats therein, to be occupied by white passengers, and a portion thereof or certain seats therein, to be occupied by colored passengers, * * * .

2. "The said companies, corporations or persons so operating motor vehicle carriers shall make no difference or discrimination in the quality or convenience of the accommodations provided for the two races under the provisions of the preceding section.

3. "The driver, operator or other person in charge of any motor vehicle above mentioned shall have the right and he is hereby directed and required at any time when it may be necessary or proper for the comfort and convenience of passengers so to do, to change the designation so as to increase or decrease the amount of space or seats set apart for either race; but no contiguous seats on the same bench shall be occupied by white and colored passengers at the same time; and said driver, operator or other person in charge of the vehicle, may require any passenger to change his or her seat as it may be necessary or proper; * * * .

4. "Each driver, operator or person in charge of any vehicle, in the employment of any company operating the same, while actively engaged in the operation of said vehicle, shall be a special policeman and have all of the powers of conservators· of the peace in the enforcement of the provisions of this act. * * *

5. "All persons who fail while on any motor vehicle carrier, to take and occupy the seat or seats or other space assigned to them by the driver,

The Supreme Court, in reversing *Morgan* v. *Commonwealth*, 184 Va. 24, 34 S. E. (2d) 491, held that as applied to an interstate passenger, the provisions of the act constituted an undue burden on interstate commerce. Our decision was based on our conclusion that the refusal of Congress to legislate in the segregation field left to the several States the right, under their police power, to continue legislation in that field, provided no burden was directly or unreasonably placed on interstate commerce (184 Va. at page 36); and that it was not shown that such a burden was created by the questioned Act (184 Va. at page 31). In arriving at a different conclusion, the Supreme Court settled the issue as to interstate passengers. Neither in the Supreme Court nor in this court was the validity of the Act as applied to intrastate passengers in issue. Our determination made it unnecessary for us to consider the divisibility of the Act.

In the present case, the issue is wholly related to persons travelling intrastate. It is not here claimed, nor was it contended at any stage in the *Morgan Case*, that a state is without power to regulate public transportation wholly within its borders.

The plaintiff urges that the decision of the Supreme Court of the United States rendered the Virginia statute invalid in its entirety. She contends that the general

operator or other person in charge of such vehicle, or by the person whose duty it is to take up tickets or collect fares from passengers therein, or who fail to obey the directions of any such driver, operator or other person in charge, as aforesaid, to change their seats from time to time as occasions require, pursuant to any lawful rule, regulation or custom in force by such lines as to assigning separate seats or other space to white and colored persons, respectively, having been first advised of the fact of such regulation and requested to conform thereto, shall be deemed guilty of a misdemeanor, * * * Furthermore, such persons may be ejected from such vehicle by any driver, operator or person in charge of said vehicle, or by any police officer or other conservator of the peace; * * * For the refusal of any such passenger to abide by the request of the person in charge of said vehicle as aforesaid, and his consequent ejection from said vehicle, neither the driver, operator, person in charge, owner, manager nor bus company operating said vehicle shall be liable for damages in any court."

language of the act makes its provisions so dependent upon each other as to show that the legislature intended it to take effect in its entirety; and that its objectionable part is not severable from the rest in such a way that the legislature could be presumed to have enacted the valid portion without the invalid. On the other hand, the defendants contend that the act is severable as to its subject matter and in its legal operation and application.

From many of the cases and from the textwriters comes the general rule "that an act may be valid in one part and invalid in another, and if the invalid is severable from the remainder, that invalid part may be ignored, if after such elimination the remaining portions are sufficient to accomplish their purpose in accordance with the legislative intent; and that only if the void portion is the inducement to the passage of the act, or is so interwoven in its texture as to prevent the statute from becoming operative in accordance with the will of the legislature, is the whole statute invalid." *Strawberry Hill Land Corp.* v. *Starbuck,* 124 Va. 71, 77, 97 S. E. 362; *Danville* v. *Hatcher,* 101 Va. 523, 44 S. E. 723; *Pearson* v. *Board of Sup'rs,* 91 Va. 322, 21 S. E. 483; Annotation, 10 L. R. A. 196.

The general principle, as to the exclusion of an invalid portion of a statute, is stated in 11 Am. Jur., Constitutional Law, as follows:

Section 163. "* * * Even though the provision is a single idea, a statute partially void because of inapplicability to a portion of the subject matter covered will be treated as operative and enforceable as to the one portion and inoperative as to the other if the subject matter is of such a nature that it may be divided. * * *"

Section 164. "* * * where a statute has been passed by the legislature and, in relation to certain cases which it affects, some part of it is not within the competency of the legislative power or is repugnant to some provision of the Constitution, such part may be adjudged void and of no avail, while all other parts of the act not obnoxious to the

same objection may be upheld as valid and have the force of law. * * *"

Section 165. "The general principle has also been applied to the large and important class of cases where state laws are partially invalid as interfering with interstate commerce. Such statutes have frequently been treated as severable and sustained to the extent of regulating commerce within the confines of the state. * * *"

■ The Act under review has no separate provisions. There is no language to be deleted therefrom. We must consider it in terms of the severability of its subject matter— that is, its severability in the sense of application or legal operation. In such a consideration, the same principles apply with respect to legislative intent as in cases involving separate provisions. In either case, the tests to be used are connected with and based upon what the legislature intended, and if, generally, it would be presumed that the legislature would have enacted the valid portion without the invalid.

■ In conducting the tests, questions as to the wisdom, or expediency of the legislation play no part in our consideration. We must find the intent in the words employed, the considerations underlying the enactment of the statute, and give effect to the purpose of the framers of the law. With us it is wholly a question of legislative power and not of legislative discretion.

It has been the settled policy of this Commonwealth, as expressed in various legislative acts since 1900, to separate white and colored passengers on public carriers. As to railroads, see Acts of 1899-1900, pages 236, *et seq.*, Code of Virginia, 1942 (Michie), sections 3962-3968; as to steamboats, Acts of 1899-1900, page 340, Code of Virginia, 1942 (Michie), sections 4022-4025; as to electric or street cars, Acts of 1902-03-04, Ex. Sess., page 990, Code of Virginia, 1942 (Michie), sections 3978-3983.

■ The power of a state to segregate white and colored passengers in intrastate transportation, provided equal accommodations are provided, has been widely sustained.

*Virginia Ry., etc., Co.* v. *Deaton,* 147 Va. 576, 137 S. E. 500; *Plessy* v. *Ferguson,* 163 U. S. 537, 540, 16 S. Ct. 1138, 41 L. Ed. 256; *Chesapeake, etc., Ry Co.* v. *Commonwealth of Kentucky,* 179 U. S. 388, 21 S. Ct. 101, 45 L. Ed. 244; 5 R. C. L., Commerce, section 35; 13 C. J. S., Carriers, section 645b; 10 Am. Jur., Civil Rights, section 13; 10 Am. Jur., Carriers, section 1079.

In *In re Rahrer,* 140 U. S. 545, 11 S. Ct. 865, 35 L. Ed. 572, it was said that the right of the state to make regulations operative wholly within the state "rests upon the acknowledged right of the States of the Union to control their purely internal affairs, and, in so doing to protect the health, morals and safety of their people by regulations that do not interfere with the execution of the powers of the general government, or violate rights secured by the Constitution of the United States."

Statutes in language as broad and general as that of the Virginia statute have been construed in both the State and Federal courts as valid in their application to the operation of intrastate commerce. *McCabe* v. *Atchison, etc., Ry. Co.,* 235 U. S. 151, 35 S. Ct. 69, 71, 59 L. Ed. 169; *Louisville, etc., Ry. Co.* v. *Mississippi,* 133 U. S. 587, 10 S. Ct. 348, 33 L. Ed. 784; *Chesapeake, etc., Ry. Co.* v. *Commonwealth of Kentucky, supra; Hart* v. *State,* 100 Md. 595, 596, 60 A. 457; *State* v. *Jenkins,* 124 Md. 376, 92 A. 773.

It has also been widely held that carriers, independently of statutes, may prescribe reasonable regulations for the separation of white and colored passengers, if equal accommodations are furnished both races. *Hall* v. *DeCuir,* 95 U. S. 485, 24 L. Ed. 547; *Chiles* v. *Chesapeake, etc., Ry. Co.,* 218 U. S. 71, 30 S. Ct. 667, 54 L. Ed. 936; 4 R. C. L., Carriers, section 530; 5 R. C. L., Civil Rights, section 15.

In *Mintz* v. *Baldwin,* 2 F. Supp. 700, 705, affirmed 289 U. S. 346, 53 S. Ct. 611, 77 L. Ed. 1245, Judge Augustus N. Hand said:

"* * * It is well settled that a statute may be constitutional as applied to one set of facts and unconstitutional

as applied to another. *Dahnke-Walker Milling Co.* v. *Bondurant*, 257 U. S. 282, 289, 42 S. Ct. 106, 66 L. Ed. 239; *Kansas City So. Ry. Co.* v. *Anderson*, 233 U. S. 325, 34 S. Ct. 599, 58 L. Ed. 983. And this is so, not only when the unconstitutional operation of the statute is the result of a distinct and grammatically separable provision, but also when it is the result of general prohibitory language contained in a single clause, provided the intent of the Legislature will not be violated by allowing the statute to operate in a limited field. *Sloane* v. *Commonwealth*, 253 Mass. 529, 149 N. E. 407; *Joel* v. *Bennett*, 276 Ill. 537, 115 N. E. 5; *State* v. *Sheldon*, 29 Wyo. 233, 213 P. 92. As Justice Brewer remarked in *McCullough* v. *Commonwealth of Virginia*, 172 U. S. 102, at page 112, 19 S. Ct. 134, 138, 43 L. Ed. 382: 'However broad and general its (the statute's) language, it cannot be interpreted as extending beyond those matters which it was within the constitutional power of the legislature to reach.'

"Whether a state statute which is unconstitutional as applied to one situation is capable of a construction that will give it a restricted and constitutional operation as to other situations is a matter upon which the state courts may speak authoritatively. *Smiley* v. *Kansas*, 196 U. S. 447, 25 S. Ct. 289, 49 L. Ed. 546."

Application of the above principle was exemplified in *Bowman* v. *Continental Oil Co.*, 256 U. S. 642, 41 S. Ct. 606, 65 L. Ed. 1139. In that case the court had before it a statute of New Mexico imposing an excise tax of two cents for each gallon of gasoline sold or used and an annual license tax of fifty dollars for each distributing station or place of business. The oil company contended that the statute by its broad language disclosed a clear intent to burden interstate commerce, by taxing gasoline purchased in other states. The plaintiff in error contended that the act was separable in enforcement and operation, so that it could be construed as affecting only domestic business. The court held that although the provisions of the statute imposing the

excise tax were not separable as to domestic and interstate business, the divisible nature of the subject rendered it feasible to control the operation of the tax so as to prevent it from being imposed on sales in interstate commerce, while allowing its enforcement as to domestic transactions. It held, however, that the provisions requiring an annual license tax, and prohibiting any sales until the tax had been paid, were not separable, since the nature of the tax was not divisible, and consequently the license tax provisions failed in their entirety. The rule applicable was stated as follows:

"Assuming that, upon the question of construction, the District Court was right, and that the act manifests an intent to tax interstate as well as domestic transactions in gasoline, and is not in this respect capable of separation, still, so far as the excise tax is concerned—imposed as it is upon the sale and use of gasoline according to the number of gallons sold and used,—the divisible nature of the subject renders it feasible to control the operation and effect of the tax so as to prevent it from being imposed upon sales in interstate commerce, while allowing the State to enforce it with respect to domestic transactions; * * *.

"But with the license tax it is otherwise. * * *

"* * * The subject taxed is not in its nature divisible, as in the case of the excise tax. The imposition falls upon the entire business indiscriminately; and so does the prohibition against the further conduct of business without making the payment. By accepted canons of construction, the provisions of the act in respect of this tax are not capable of separation so as to confine them to domestic trade, leaving interstate commerce exempt. (Cases cited)."

In *Chesapeake, etc., Ry. Co.* v *Commonwealth of Kentucky, supra,* the real question was whether the proper construction of a statute which, in general terms, required all railroads, operating within the State of Kentucky, to furnish separate coaches or cars for the transportation of white and colored passengers, confined its operation to passengers whose journeys commenced and ended within the boundaries of the

state. The railroad company there contended, as does the plaintiff here, that if the statute was unconstitutional in its application to interstate passengers, it could not be held valid for any purpose but must be held invalid *in toto*. In affirming the judgment of the Court of Appeals of Kentucky that the statute was applicable to passengers travelling between two points in the state, the Supreme Court said that "if it were well settled that a separate coach law was unconstitutional, as applied to interstate commerce, the law applying on its face to *all* passengers should be limited to such as the legislature were competent to deal with;" and that the state court, in holding the act to be severable, had followed a principle of construction from which there was no appeal.

See also, *Louisville, etc., Ry. Co.* v. *Mississippi, supra*, which held the separate coach law of the State of Mississippi valid as applied to domestic commerce.

Nothing we said in *Boyles* v. *Roanoke*, 179 Va. 484, 19 S. E. (2d) 662, or *Hannabass* v. *Maryland Cas. Co.*, 169 Va. 559, 194 S. E. 808, is in conflict with the foregoing rules of construction.

In the *Boyles Case*, we held, in construing a city ordinance, that the intention of the legislative body could not be satisfied by the elimination of the void portion of the ordinance and the enforcement of the remainder as amended by the trial judge.

In the *Hannabass Case*, the invalid portion of a penalty ordinance was so interwoven with the subject matter of the ordinance as to prevent a separation of its provisions, and consequently the entire ordinance was declared void.

■ It cannot be doubted that it was the intention and purpose of the legislature of Virginia to frame a law requiring the separation of white and colored passengers on public carriers as far as possible. The several segregation statutes and the consideration underlying their enactment, the settled public policy of the State to separate white and colored passengers, in promotion of the comfort of the travelling public, and in the "preservation of the public

peace and good order," lead us to the inescapable conclusion that it was the intention and purpose of the legislature to frame the law so as to make it cover intrastate transportation regardless of its effect upon interstate operation.

The major portion of public transportation is intrastate. The routes and terminal points of many bus lines are completely within the confines of the State, especially those of the bus systems operating in and around the cities and towns. There may be some difficulty in applying one rule to interstate passengers and another to those travelling intrastate, where the transportation lines extend beyond a state line. Possible difficulties in the enforcement of a statute do not establish its invalidity. They may affect the result of enforcement; but they do not involve legal principles in the interpretation and construction of statutes. They present questions for legislative consideration and correction, if modification or repeal be deemed necessary and proper.

Intrastate transportation is distinctly severable from interstate. Each form of transportation is subject to distinct and different regulative authority. Each form is, and may be, subject to different regulations. In the application of the rule adopted by the Federal courts and this court, there is nothing to prevent a statute from being severable, although its language is broad enough to include both interstate and intrastate transactions, so long as it can be applied to intrastate commerce without burdening interstate commerce. Under this rule, the Virginia Act is severable as to its subject matter, that is, the segregation of white and colored passengers in transportation on passenger motor vehicles. Legal effect and application can be given to so much of the Act as affects intrastate traffic alone, and the intention of the legislature satisfied to that extent.

The plaintiff further contends that equal accommodations were not offered to her when she was directed by the bus driver to change her seat, and that the requested exchange was an unjust discrimination against her solely on account of her race and color.

The law is not in dispute, and there is little or no conflict in the evidence on this question.

Segregation statutes must be enforced equally and without discrimination in the quality and convenience of accommodations provided for white and colored passengers. This is in section 2 of the Acts of 1930, page 343, specifically provided. The colored passenger is entitled to every substantial accommodation offered a white passenger. There must be "substantial equality of treatment" as well as "substantial equality of facilities" furnished. There must be no discrimination in terms or enforcement. *Davis* v. *Commonwealth*, 182 Va. 760, 30 S. E. (2d) 700; *McCabe* v. *Atchison, etc., Ry. Co., supra; Mitchell* v. *United States*, 313 U. S. 80, 61 S. Ct. 873, 85 L. Ed. 1201.

The requirement of the bus driver that the plaintiff change her seat was not only in accordance with the rule of the company but it was in compliance with the law and the public policy of this State, provided there was no inequality of facilities furnished. The two white passengers standing in the aisle were precluded from sitting on the long rear seat, and an exchange of seats was necessary for their comfort and convenience.

It is impossible for the accommodations on a bus to be absolutely identical in all respects. Detailed information was given to the jury as to the construction of the several seats, the windows, and the ventilation of the bus upon which Mrs. New was travelling. It was shown that the long seat in the rear to which she was asked to remove, while lacking an adjustable back, had the same kind of springs, padding, and covering as the aisle seat she occupied. It had ventilation overhead rather than immediately at its side. As to location in the bus, there was little difference between the seats, one seat being directly behind the other. There must be some seats in the front of a vehicle and some in the rear, as well as in the middle. Some must be over the wheels, or, perhaps, over the engine, if the engine is under the body. All window arrangements are not the same. A minor or

trifling inconvenience or difference in seating is inevitable under the most favorable conditions, and minor disadvantages in travel do not necessarily indicate discrimination.

Instruction number 1 clearly submitted the ascertainment of the facts to the jury, and fully and correctly stated the law applicable to the facts found. The finding of the jury resolved whatever conflict there was adversely to the plaintiff.

There was also some conflict in the evidence as to the amount of force required to remove the plaintiff from the bus. Instruction number 2 correctly presented that question to the jury. The preponderating evidence was clearly to the effect that no more force was used than was necessary under the circumstances. The jury settled that issue in favor of the defendants.

The evidence was amply sufficient to support the verdict of the jury on all of the issues of fact. Their findings in that respect are final and conclusive, and, under settled principles, their verdict cannot be disturbed by this court.

For the foregoing reasons, we are of opinion to affirm the judgment of the trial court.

*Affirmed.*