# CHILES *v.* CHESAPEAKE AND OHIO RAILWAY COMPANY.

## ERROR TO THE COURT OF APPEALS OF THE STATE OF KENTUCKY.

No. 158.    Argued April 18, 1910.—Decided May 31, 1910.

As held by the Court of Appeals of Kentucky, a railroad company has the right, in that State, to establish rules and regulations which require white and colored passengers, even though they be interstate, to occupy separate apartments upon the train provided there is no discrimination in the accommodations.

In this case *held* that an interstate colored passenger was not compelled to occupy a separate apartment on a train in Kentucky from that occupied by white passengers under a state statute but under rules and regulations of the railroad company.

Whether interstate passengers of different races must have different apartments or share the same apartment is a question of interstate commerce to be determined by Congress alone, *Louisville & Nashville R. R. Co.* v. *Mississippi,* 133 U. S. 587, and the inaction of Congress in that regard is equivalent to the declaration that carriers can by reasonable regulations separate colored and white passengers.

Regulations which are induced by the general sentiment of the community for whom they are made and upon whom they operate cannot be said to be unreasonable.

125 Kentucky, 299, affirmed.

THE facts, which involve constitutional rights of colored passengers on interstate trains in Kentucky, are stated in the opinion.

*Mr. J. Alexander Chiles,* plaintiff in error *pro se,* with whom *Mr. B. E. Smith, Mr. W. L. Ricks* and *Mr. Albert S. White* were on the brief.

*Mr. John T. Shelby,* with whom *Mr. Henry T. Wickham* and *Mr. Henry Taylor, Jr.,* were on the brief, for defendant in error.

MR. JUSTICE McKENNA delivered the opinion of the court.

Plaintiff in error is a colored man. He bought a first-class ticket from defendant in error, a corporation engaged in operating a line of railroad from the city of Louisville, State of Kentucky, and the city of Cincinnati, State of Ohio, to the city of Washington, District of Columbia. The ticket entitled him to ride from Washington to Lexington, Kentucky.

The train which he took at Washington did not run through to Lexington, and he changed to another train at Ashland, Kentucky, going into a car, which it is alleged, under the rules and regulations of defendant in error, was set apart exclusively for white persons. From this car he was required to remove to a car set apart exclusively for the transportation of colored persons.

He removed under protest and only after a police officer had been summoned by defendant in error. Subsequently he brought this action in the Circuit Court of Fayette County, Kentucky. The case was tried to a jury, which rendered a verdict against him. A motion for a new trial was overruled. He appealed to the Court of Appeals of the State and the action and judgment of the trial court were affirmed.

The assignments of error in this court depend upon the contention that plaintiff in error was an interstate passenger and was entitled to a first-class passage from Washington to Lexington, and that, therefore, the act of defendant in error in causing him to be removed from the car at Ashland was a violation of his rights and subjected the railroad company to damages.

The Court of Appeals of the State made the case turn on a narrow ground, to wit, the right which, it was decided, a railroad company had "to establish such rules and regulations as will require white and colored passen-

gers, although they may be interstate, to occupy separate compartments upon the train." The court, however, said that there could be no discrimination in the accommodations.

The court found the facts of the removal of plaintiff and the character of the car to which he was required to remove as follows:

"This Lexington train is made up of four coaches, the first, and the one nearest the engine, being a combined baggage, mail and express car; the second is a passenger coach divided by board partitions into three compartments; one of these compartments, located at the end of the car, is set apart for colored passengers, the middle compartment is for the use of colored passengers who smoke, and the end compartment is for the accommodation of white persons who smoke; the third car is a passenger coach intended for the use of white ladies and gentlemen; the fourth car is a sleeping car that runs through from Washington to Lexington. Appellant, when he attempted to get on the Lexington train was told by the brakeman to go in the colored apartment. This he declined to do, and walked in and took a seat in the third coach, set apart for the exclusive use of white passengers. In a few moments the conductor came in and asked the appellant, in obedience to a rule of the company, to go forward in the apartment set apart for colored passengers, but he refused to do so, stating that he had bought a through first-class ticket from Washington to Lexington, and was an interstate passenger who knew his rights, and that the separate coach law of Kentucky did not apply to him, and declared his intention of retaining the seat he occupied. Thereupon the conductor summoned a policeman, who also requested appellant to go in the other car, and, upon his refusal, he was informed that he would be compelled to leave the car in which he was seated. Appellant, yet insisting upon his right to remain in the

car in which he was, followed the policeman into the colored passenger coach."

The court further said:

"There is really no material issue of fact involved in the case. No force or violence, or rude or oppressive conduct, was employed by the agents of appellee in removing appellant from the car in which he was seated to the car set apart for colored persons. And except that the car into which he was removed is divided by partitions into three compartments, it was substantially equal in quality, convenience and accommodation to the car into which he first seated himself, and the compartment into which appellant was directed to go was cleanly and ample for his accommodation, and equipped with the same conveniences as the other passenger coaches on the train from which he was ejected."

In this the court came to the same conclusion as the jury. Plaintiff in error insists that this conclusion put out of view his rights as an interstate commerce passenger. Both courts ignored such rights, he contends, the trial court in refusing instructions that were requested and in its ruling on the trial, and the Court of Appeals in affirming the judgment which was based upon the verdict.

We need not set out the instructions nor the rulings. The complaint of the action of the court rests upon the contention that, as against an interstate passenger, the regulation of the company in providing different cars for the white and colored races is void. There is a statute of Kentucky which requires railroad companies to furnish separate coaches for white and colored passengers, but the Court of Appeals of the State put the statute out of consideration, declaring that it had no application to interstate trains, and defendant in error does not rest its defense upon that statute, but upon its rules and regulations. Plaintiff in error makes some effort to keep the statute in the case, and says that the trial court, by its ruling upon

testimony and by its instructions, confined "the jury only to the lesser motive" of defendant's "wrongful act." In other words, as we understand plaintiff in error, confined the jury to the consideration of the regulations of the railroad company and withdrew from its consideration the effect of the statute under which, it is said, the conductor declared he acted. But by this we understand plaintiff in error to illustrate that his rights as an interstate passenger were denied. We are, therefore, brought back to the question what his rights as such passenger were.

The elements of that question have been considered and passed on in a number of cases. And we must keep in mind that we are not dealing with the law of a State attempting a regulation of interstate commerce beyond its power to make. We are dealing with the act of a private person, to wit, the railroad company, and the distinction between state and interstate commerce we think is unimportant.

In *Hall* v. *DeCuir*, 95 U. S. 485, the court passed on an act of the State of Louisiana, which required those engaged in the transportation of passengers among the States to give all passengers traveling within that State, upon vessels employed in such business, equal rights and privileges in all parts of the vessel, without distinction on account of race or color, and subjected to an action for damages the owner of such vessel who excluded colored passengers on account of their color from the cabin set apart for whites during the passage. It was held that the act was a regulation of interstate commerce and was void. The court said, by Chief Justice Waite, after stating that the power of regulating interstate commerce was exclusively in Congress, "This power of regulation may be exercised without legislation as well as with it." And that, "by refraining from action, Congress, in effect, adopts as its own regulations those which the common

law or the civil law, where that prevails, for the government of such business." The court further said, quoting from *Welton* v. *The State of Missouri*, 91 U. S. 282, " 'that inaction [by Congress] is equivalent to a declaration that interstate commerce shall remain free and untrammeled.' " And added, "Applying that principle to the circumstances of this case, Congressional inaction left Beason [the ship owner] at liberty to adopt such reasonable rules and regulations for the disposition of passengers upon his boat while pursuing her voyage within Louisiana or without as seem to him most for the interest of all concerned." This language is pertinent to the case at bar, and demonstrates that the contention of the plaintiff in error is untenable. In other words, demonstrates that the interstate commerce clause of the Constitution does not constrain the action of carriers, but on the contrary leaves them to adopt rules and regulations for the government of their business, free from any interference except by Congress. Such rules and regulations, of course, must be reasonable, but whether they be such cannot depend upon a passenger being state or interstate. This also is manifest from the cited case. There, as we have seen, an interstate colored passenger was excluded from the privileges of the cabin set apart for white persons by a regulation of the carrier and where the colored passenger's right to be was attempted to be provided by a state statute. The statute was declared invalid, because it attempted to force a carrier to do the very thing which plaintiff in error complains was not done in the case at bar, to wit, permit him to ride in the place set apart for white passengers. In other words, the statute was struck down, because it interfered with the regulations of the carrier as to interstate passengers. This court commented on the case subsequently in *Louisville &c. Railway Company* v. *Mississippi*, 133 U. S. 587, 590, and said: "Obviously, whether interstate passengers of one race should, in any portion

of their journey, be' compelled to share their cabin ac-commodations with passengers of another race was a ques-tion of interstate commerce, and to ' be determined by Congress alone." We have seen that it was decided in *Hall* v. *DeCuir* that the inaction of Congress was equiva-lent to the declaration that a carrier could by regulations separate colored and white interstate passengers.

In *Plessy* v. *Ferguson*, 163 U. S. 540, a statute of Louisiana which required railroad companies to provide separate accommodations for the white and colored races was considered. The statute was attacked on the ground that it violated the Thirteenth and Fourteenth Amend-ments of the Constitution of the United States. The opinion of the court, which was by Mr. Justice Brown, reviewed prior cases, and not only sustained the law but justified as reasonable the distinction between the races on account of which the statute was passed and enforced. It is true the power of a legislature to recognize a racial distinction was the subject considered, but if the test of reasonableness in legislation be, as it was declared to be, "the established usages, customs and traditions of the people" and the "promotion of their comfort and the preservation of the public peace and good order," this must also be the test of the reasonableness of the regula-tions of a carrier, made for like purpose and to secure like results. Regulations which are induced by the general sentiment of the community for whom they are made and upon whom they operate, cannot be said to be unreason-able. See also *Chesapeake & Ohio Ry. Company* v. *Ken-tucky*, 179 U. S. 388.

The extent of the difference based upon the distinction between the white and colored races which may be ob-served in legislation or in the regulations of carriers has been discussed so much that we are relieved from further enlargement upon it. We may refer to Mr. Justice Clif-ford's concurring opinion in *Hall* v. *DeCuir* for a review

of the cases. They are also cited in *Plessy* v. *Ferguson* at page 550. We think the judgment should be affirmed.

*It is so ordered.*

Mr. JUSTICE HARLAN dissents from the opinion and judgment.