### JAMES LEON PRIDGEN v. CAROLINA COACH COMPANY.

(Filed 5 May, 1948.)

**1. Carriers § 18b—**

Motor carriers of passengers are required by law to adopt "reasonable regulations and practices" relating to the "transportation of passengers in interstate or foreign commerce." 49 U.S.C.A., 316 (a). And while it is held in *Morgan v. Virginia*, 328 U. S., 373, that a state statute which requires segregation of interstate passengers is beyond the state's power to make, the decision does not purport to invalidate reasonable rules and regulations of interstate carriers, which require segregation of the white and Negro races.

**2. Malicious Prosecution § 10—**

A holding by the trial court that the warrant on which plaintiff was arrested is void, to which ruling no exception was taken, and that therefore plaintiff has no cause of action for malicious prosecution, is tantamount to a dismissal of that cause of action and such ruling is not subject to review on appeal.

**3. Carriers § 18b: False Imprisonment § 1½—Removal of passenger from bus for refusal to comply with carrier's reasonable regulations held not false imprisonment.**

The evidence disclosed that a Negro took a seat midway defendant's bus, that defendant's driver and dispatcher in turn requested him to move to the rear of the bus, as required by the rules of the company and the law of North Carolina, and upon refusal, got a police officer who renewed the request, and who arrested plaintiff after he again refused to comply. There was no evidence that the seat offered plaintiff to the rear of the bus was not equal in every respect to any other seat on the bus, or that if he had taken the seat offered he would have been later required to move at any time before reaching his destination in another state. The evidence further disclosed that after being removed from the bus, plaintiff was advised, up to the time the bus departed, that he could re-enter the bus if he would comply with the regulations of the carrier in regard to segregation. *Held:* The removal of plaintiff from the bus, under the circumstances shown by the evidence, does not constitute false imprisonment.

**4. Principal and Agent § 13c—**

The agent's authority to bind his principal cannot be shown by the acts or declarations of the agent.

**5. Carriers § 18b: False Imprisonment § 1½: Principal and Agent § 10— Act of agent in swearing out warrant for purpose of punishment and not to enforce principal's regulations is beyond scope of authority.**

After plaintiff, because of his refusal to abide by the carrier's regulations relating to the segregation of the races, had been removed from defendant's bus by a police officer at the instance of defendant's dispatcher, the dispatcher, after the bus had departed, accompanied plaintiff and the officer to the city hall where the dispatcher signed a warrant charging plaintiff with disorderly conduct in refusing to comply with the carrier's

PRIDGEN *v.* COACH CO.

regulations.  There was no evidence that the carrier authorized or ratified the acts of its dispatcher in having plaintiff held in custody until he could obtain a warrant or in swearing out the warrant for his arrest.  *Held:* The carrier's motion to nonsuit plaintiff's action for false imprisonment was properly allowed, since the dispatcher's acts were not for the purpose of enforcing the carrier's regulations, but were solely in an effort to punish plaintiff for an act already committed, and were therefore beyond the scope of his authority.

APPEAL by plaintiff from *Grady, Emergency Judge,* at the January Term, 1948, of WAKE.

This is a civil action for false imprisonment and malicious prosecution.

On 28 September, 1946, the plaintiff purchased a ticket from a ticket agent at the Raleigh Union Bus Depot, for transportation from Raleigh, N. C., to Norfolk, Va.  The ticket was sold subject to the rules and regulations of the defendant carrier.  The plaintiff boarded one of the buses operated by the defendant, which was scheduled to leave immediately for Norfolk.  Upon entering the bus, he took a seat at or near the middle of the bus.  The driver of the bus requested the plaintiff to move to the rear, stating to him that he being a Negro, the rules and regulations of the company and the law of the State of North Carolina required him to sit in the back of the bus.  The bus was crowded; white people were sitting behind the plaintiff, and the only vacant seats were in the rear.  Plaintiff refused to move, on the ground that he was an interstate passenger, and was not amenable to such rules or to the law of North Carolina, requiring segregation of passengers on the basis of race, in vehicles of public carriage.  Whereupon, the driver called one W. A. Green, a dispatcher for the defendant, who likewise requested the plaintiff to move to the rear of the bus.  The plaintiff again refused to move. Mr. Green requested him to get off the bus if he would not move to the rear as requested; he refused to do so.  Mr. Green then got off the bus and sent Sgt. W. J. Horton, a Raleigh policeman, on the bus.  Sgt. Horton requested plaintiff to sit in the back of the bus.  The plaintiff stated to him that he was an interstate passenger and held a ticket to Norfolk, Va., and was within his rights to sit in any available space during interstate travel, and Sgt. Horton left.  He re-entered the bus later and told plaintiff that he was under arrest.  Both the driver and Mr. Green were present at the time the plaintiff was arrested.  Sgt. Horton and Mr. Green informed the plaintiff he could get back on the bus if he would sit in the rear.  He refused to go back, and the bus left. The plaintiff, according to his evidence, was treated courteously by Mr. Green and the bus driver.  He also testified that he was thoroughly "versed with all the rules and regulations of the company," and knew if he did not comply with them he was subject to removal.

After the Norfolk bus left, Mr. Green accompanied the plaintiff and the officer to the City Hall, where Mr. Green signed a warrant charging the plaintiff with disorderly conduct for refusing to comply with the rules and regulations of the Carolina Coach Company, as ordered by its driver, A. F. Collier. The plaintiff was released on bond. When the case was called for trial, no one appeared as a witness against the plaintiff, and the State took a *nolle prosequi*.

At the close of plaintiff's evidence the court held the warrant signed by Mr. Green did not charge a crime, and was void; therefore the plaintiff had no cause of action for malicious prosecution. *Young v. Hardwood Co.,* 200 N. C., 310, 156 S. E., 501. No exception was taken to this ruling.

The defendant then moved for judgment as of nonsuit, and the motion was allowed on the ground that the evidence is insufficient to show that the defendant was responsible for plaintiff's arrest. Judgment was entered accordingly, and the plaintiff appealed, assigning error.

*Herman L. Taylor for plaintiff.*

*Arch T. Allen and I. E. Johnson for defendant.*

DENNY, J. This appeal is not predicated on the unreasonableness of the rules and regulations of the defendant, nor upon its lack of authority to enforce such rules by having a passenger removed from one of its buses, who refuses to comply therewith. Moreover, we know of nothing that makes segregation *per se* unconstitutional or violative of any act of Congress. The discrimination forbidden by the Interstate Commerce Act, "is not one of segregation, but one of equality of treatment." *Mitchell v. U. S.,* 313 U. S., 80, 85 Law Ed., 1201. In *Hall v. DeCuir.* 95 U. S., 485, 24 Law Ed., 547, and *Chiles v. Chesapeake & Ohio Railway Co.,* 218 U. S., 71, 54 Law Ed., 936, the Supreme Court of the United States held in effect that in the absence of legislation by Congress, a common carrier is at liberty to adopt such reasonable rules and regulations for the separation of the white and Negro races as seems to it to be for the best interest of all concerned.

In *Plessy v. Ferguson,* 163 U. S., 537, 41 Law Ed., 256, in passing upon the constitutionality of a statute enacted by the Legislature of Louisiana, requiring segregation of the white and Negro races in public conveyances, the Court said: "In determining the question of reasonableness it (the legislature) is at liberty to act with reference to the established usages, customs, and traditions of the people, and with a view to the promotion of their comfort, and the preservation of the public peace and good order. Gauged by this standard, we cannot say that a law which authorizes or even requires the separation of the two races in

public conveyances is unreasonable or more obnoxious to the 14th Amendment than the acts of Congress requiring separate schools for colored children in the District of Columbia, the constitutionality of which does not seem to have been questioned, or the corresponding acts of state legislatures." And in the case of *Chiles v. Chesapeake & Ohio Railway Co., supra,* the Court, in passing upon a rule requiring segregation, which had been adopted by a carrier of interstate passengers, laid down these same considerations as the test in determining the reasonableness of such rule, and said further: "We must keep in mind that we are not dealing with the law of a state attempting a regulation of interstate commerce beyond its power to make. We are dealing with the act of a private person, to wit, the railroad company; and the distinction between state and interstate commerce we think is unimportant. . . . The interstate commerce clause of the Constitution does not constrain the action of carriers, but, on the contrary, leaves them to adopt rules and regulations for the government of their business, free from any interference except by Congress. Such rules and regulations, of course, must be reasonable, but whether they be such cannot depend upon a passenger being state or interstate. . . . Regulations which are induced by the general sentiment of the community for whom they are made and upon whom they operate cannot be said to be unreasonable."

There is no evidence on this record tending to show that the seat offered the plaintiff on defendant's bus was not equal in every respect to any other seat on the bus. Furthermore, there is no evidence which tends to show that if the plaintiff had taken a seat in the rear of the bus he would have been required to move his seat from time to time between Raleigh and Norfolk, which the Supreme Court of the United States held in *Morgan v. Virginia,* 328 U. S., 373, 90 Law Ed., 1317, would constitute a burden on interstate commerce. Surely segregation, in the absence of any discrimination in favor of or against the white or Negro race, does not constitute a burden on interstate commerce.

Evidently the plaintiff is under the impression that the recent decision of the Supreme Court of the United States, in *Morgan v. Virginia, supra,* is a judicial determination that any law enacted by a State or any regulation adopted by a common carrier, which requires the separation of the white and Negro races, in public conveyances, is illegal and may be ignored by interstate passengers. We do not so interpret the opinion. In the *Morgan case,* the Court simply denied the right of a State to interfere with or impose an undue burden upon interstate commerce. However, it did not deny a motor carrier the right to adopt reasonable rules and regulations for the government of its business. *Plessy v. Ferguson, supra; Chiles v. Chesapeake & Ohio Railway Co., supra; Simmons v. Atlantic Greyhound Corporation,* 75 Fed. Supp., 166. Moreover, the

Motor Carrier Act, by which the regulation of motor carriers was committed to the Interstate Commerce Commission, makes it the duty of interstate carriers to establish "just and reasonable regulations and practices" relating to the "transportation of passengers in interstate or foreign commerce." 49 U.S.C.A., 316 (a). And thus far the Supreme Court of the United States has held that rules and regulations requiring the segregation of interstate passengers in public conveyances, are reasonable when such rules have been adopted by the carrier, and are in accord with "the established usages, customs, and traditions of the people, and with a view to the promotion of their comfort, and the preservation of the public peace and good order." *Plessy v. Ferguson, supra.*

Furthermore, we know of no decision of the Supreme Court of the United States which holds that an interstate motor carrier may not adopt rules and regulations reserving full control and discretion as to the seating of passengers, and may not further reserve the right to require passengers to change seats at any time during a trip. *Simmons v. Atlantic Greyhound Corporation, supra.*

The plaintiff says he knew the rules and regulations of the defendant and knew if he did not comply with them he was subject to removal; but he did not offer them in evidence in the trial below, nor attack them as being unreasonable or discriminatory. Therefore, we do not think the action of the agents of the defendant, in having the plaintiff removed from the defendant's bus can be challenged on this appeal. The plaintiff does not complain of the conduct of the agents of the defendant, in removing him from its bus, but only of false imprisonment and malicious prosecution. However, he took no exception to the ruling of the court below in holding the warrant signed by Mr. Green charged no criminal offense, and was, therefore, null and void. Consequently, we are not called upon to determine whether or not that ruling was correct. See G. S., 60-136, and *S. v. Brown*, 225 N. C., 22, 33 S. E. (2d), 121. Nevertheless, it was tantamount to a dismissal of the plaintiff's alleged cause of action for malicious prosecution. *Caudle v. Benbow*, 228 N. C., 282, 45 S. E. (2d), 361.

On the evidence disclosed by the record, we do not think plaintiff can successfully contend that removal from defendant's bus constituted false imprisonment, so long as he was free to re-enter the bus and proceed on his journey, provided he would abide by the rules and regulations of the company. And according to his evidence he was given that privilege up to the very moment the defendant's bus left for Norfolk. But, when the plaintiff declined to take passage on defendant's bus, subject to its rules and regulations, he should not have been required to go to the City Hall and post bail, unless his conduct had been such as to violate some criminal statute. Whether or not there had been such a violation on the part of the plaintiff, is not before us.

Therefore, the sole question presented for determination on this appeal is whether or not Mr. Green was acting within the scope of his authority, when he left the premises of his employer and undertook to obtain a warrant for the arrest of the plaintiff.

Ordinarily, the criminal prosecution of an offender is not within the scope of an agent's authority, unless such criminal prosecution was instituted to protect the property of his employer or to recover property belonging to him. And when the act of the agent could have no effect other than the punishment of the offender, such act will not be construed as an effort to punish the offender because he had wronged his employer, but because he had wronged the State. *Dickerson v. Refining Co.,* 201 N. C., 90, 159 S. E., 446, and cases cited therein. "There is a marked distinction between a false imprisonment or arrest caused by an agent for the purpose of protecting the rights or interests of his master—that is, to protect property to prevent its theft, or to recover it back—and an arrest or imprisonment caused for the purpose of punishing an offender for an act already done." 22 Amer. Jur. (False Imprisonment), Sec 38, p. 380.

It was said in *Daniel v. R. R.,* 136 N. C., 517, 67 L. R. A., 455, 48 S. E., 816: "A servant entrusted with his master's goods may do what is necessaary to preserve and protect them, because his authority to do so is clearly implied by the nature of the service, but when the property has been taken from his custody or stolen and the crime has already been committed, it cannot be said that a criminal prosecution is necessary for its preservation or protection. This may lead to the punishment of the thief or the trespasser, but it certainly will not restore the property or tend in any degree to preserve or protect it. It is an act clearly without the scope of the agency and cannot possibly be brought within the limits of the implied authority of the agent."

In *Lamm v. Charles Stores Co.,* 201 N. C., 134, 159 S. E., 144, this Court said: "All the authorities are in agreement that if the agent, of his own notion, undertakes to set in motion the machinery of the criminal law to avenge an imagined wrong against his employer, that such act does not impose liability upon the employer unless such employer authorized or ratified the conduct of the employee. It is immaterial that the employee intended by such act to secure a benefit for the employer." *Roland v. Express Co.,* 201 N. C., 815, 161 S. E., 483; *Parrish v. Manufacturing Co.,* 211 N. C., 7, 188 S. E., 817; *Snow v. DeButts,* 212 N. C., 120, 193 S. E., 224; *Hammond v. Eckerd's,* 220 N. C., 596, 18 S. E. (2d), 151; *Bagley v. Bank,* 222 N. C., 97, 21 S. E. (2d), 889. Likewise, the agent's authority to bind his principal cannot be shown by the acts or declarations of the agent. *Daniel v. R. R., supra; Carter v. Thurston Motor Lines,* 227 N. C., 193, 41 S. E. (2d), 586.

In the instant case the enforcement of the rules and regulations of the defendant were no longer involved. They had been enforced, and the plaintiff does not challenge the defendant's right to enforce them. But there is no evidence on this record tending to show that the defendant had authorized any of its agents or employees to swear out a warrant for the arrest of a passenger who might refuse to comply with its rules and regulations; nor is there any evidence that would tend to show a ratification of Mr. Green's conduct in this respect.

We do not think the evidence adduced in the trial below is sufficient to show the defendant authorized or ratified the action of Mr. Green in having the plaintiff held in custody until he could obtain a warrant for his arrest.

The judgment of the court below will be upheld.

Affirmed.