## DAY v. ATLANTIC GREYHOUND CORPORATION.

### No. 5803.

United States Court of Appeals
Fourth Circuit.

Dec. 7, 1948.

Martin A. Martin, of Richmond, Va. (Hill, Martin & Robinson, of Richmond, Va., on the brief), for appellant.

Robert Lewis Young, of Richmond, Va. (Oscar L. Shewmake, John C. Goddin, and John G. May, Jr., all of Richmond, Va., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This action for personal damages grew out of the enforcement of a regulation of the carrier which required the segregation of white and colored passengers in its motor busses. The plaintiff, a Negro woman 67 years of age, refused to conform to the regulation or to leave the bus in which she was a passenger, and, as a consequence, was forcibly ejected from the vehicle by police officers summoned by the driver, and then arrested by the police officers and confined on the charge of disorderly conduct. The reasonableness of the regulation was submitted by the District Judge to the jury which returned a verdict for the defendant.

The most important legal question on this appeal is raised by the contention of the plaintiff that any rule of a common carrier which imposes racial segregation upon its passengers not only contravenes the principles of the common law, but violates the Fourteenth Amendment of the Federal Constitution. This question, however, is not open to debate in this court. It is foreclosed by binding decisions of the Supreme Court which hold that an interstate carrier has a right to establish rules and regulations which require white and colored passengers to occupy separate accommodations provided there is no discrimination in the arrangement. See Hall v. DeCuir, 95 U.S. 485, 24 L.Ed. 547; Chiles v. Chesapeake & Ohio R. Co., 218 U.S. 71, 30 S.Ct. 667, 54 L.Ed. 936, 20 Ann.Cas. 980. It is true that in more recent decisions, notably Morgan v. Virginia, 328 U.S. 373, 66 S.Ct. 1050, 90 L.Ed. 1317, 165 A.L.R. 574, and Bob-Lo Excursion Co. v. Michigan, 333 U.S. 28, 68 S.Ct. 358, the right of colored passengers in public vehicles to fair and reasonable treatment has been sustained, and the limits to the power of the states to enact segregation statutes have been defined. In Morgan v. Virginia, for example, it was held that a Virginia statute which requires motor carriers to allocate seats to white and colored passengers so as to separate the races, and requires passengers, if necessary, to change their seats repeatedly in order to comply with the allocation, imposes an undue burden on interstate commerce and therefore violates Article 1, § 8, Cl. 3 of the Federal Constitution. Nevertheless, in this very case the court pointed out that it was dealing with a state statute and not with a regulation of the carrier; and the court referred specifically to its earlier decision in Chiles v. Chesapeake & Ohio R. Co., supra, in the following language, 328 U.S. 373, 377, Note 12, 66 S.Ct. 1050, 1053, 90 L.Ed. 1317, 165 A.L.R. 574: "When passing upon a rule of a carrier that required segregation of an interstate passenger, this Court said, 'And we must keep in mind that we are not dealing with the law of a state attempting a regulation of interstate commerce beyond its power to make.' Chiles v. Chesapeake & Ohio R. Co., 218 U.S. 71, 75, 30 S.Ct. 667, 668, 54 L.Ed. 936, 20 Ann.Cas. 980." Since the Chiles case expressly sustained the power of an interstate carrier to issue a segregation regulation, provided that it is not discriminatory, our inquiry must be limited to the nature of the regulation enforced in the pending case, and we may not inquire whether the segregation of the races in public vehicles is in itself inherently discriminatory.

When the present controversy arose, the bus company had on file with the Interstate Commerce Commission, pursuant to the requirements of Sections 216(a) and 217(a) of the Interstate Commerce Act of 1935 as amended, and pursuant to the regulations of the Commission promulgated thereunder, 49 U.S.C.A. 316(a), 317(a), a reservation which makes the following provision:

"Reservations:

\* \* \* \* \* \*

"(2) The carriers reserve to themselves full control and discretion as to seating of passengers and reserve the right to change such seating at any time during the trip."

On August 15, 1946, shortly after the decision in the Morgan case, the carrier issued an instruction to its drivers plainly intended to obviate the shifting of seats criticized in that decision. Reservation (2) was set out, and the drivers were directed with respect to the seating of white and colored passengers in the following language:

"Where such has been the accepted usage, custom and tradition, it is suggested that, as far as practicable and pursuant to the authority of the rule above quoted, colored passengers be seated from the rear forward, and white passengers from the front toward the rear. This rule is based upon established usage induced by general sentiment of the community, and is designed not only to promote the comfort, safety and security of all the passengers, but to preserve peace and good order and avoid undue discrimination. This will also serve the purpose of accomplishing uniformity, and will avoid requiring passengers from repeatedly shifting seats to meet the seating requirements of a changing passenger group.

"It is essential in any assignment of seats that there be no undue discrimination of any kind shown against any passenger, whether colored or white, and that all be given seats which are substantially equal, in comfort and convenience to other available seats in the coach. This is a requirement of the law and of good common sense, and must be strictly followed.

\* \* \* \* \* \*

"Should a passenger refuse to comply with your seating assignment, you must not use force. If, after every persuasive method has failed and the passenger still refuses to comply and has been courteously advised of our rules and regulations, and that you will have to obtain the assistance of a law enforcement officer, you may then call for and appeal to a police or law enforcement officer and have such passenger removed from the bus. Under the law a peace officer does not need a warrant to arrest a person who has committed a misdemeanor in his presence. Therefore, in the event you find it necessary to seek the assistance of a peace officer, you should repeat your request in the presence and hearing of this officer, and then leave the matter of enforcement to him. Passengers should not be removed from the bus except at points where we maintain depots, where they will be safe and protected."

On December 22, 1946, at Syracuse, New York, the plaintiff purchased a round trip bus ticket from Syracuse to Florida, with stopover privileges at Richmond, Virginia. She rode in the busses of connecting carriers from Syracuse to Richmond, where she stayed three weeks, and on January 22, 1946, boarded a bus of the defendant company at Richmond for transportation to Winter Haven, Florida. She was the first person aboard the bus, and took the second seat from the front on the side opposite the driver, and occupied this seat beside a white woman without objection during the afternoon until the bus arrived at South Hill, Virginia. All the passengers, except the plaintiff, and the driver then left the bus during a stop for supper. When the driver returned he found the plaintiff alone in the bus and directed her to change her seat. According to her testimony, she was ordered to take a place on the last seat; indeed such an order was in accord with the company's instructions which required the driver to seat colored passengers from the rear of the bus forward. The plaintiff, however, refused to move although the driver explained that he was merely carrying out the company's orders. She was under the impression that the Supreme Court in the Morgan case had declared the segregation of the races in public vehicles a violation of the constitutional rights of colored persons. Moreover, she had been

permitted to ride unmolested in the same seat with a white passenger during the two and a half hours ride from Richmond to South Hill. On the latter point the driver testified that the bus was crowded with passengers standing in the aisles when he left Richmond, and he did not notice that the plaintiff was seated in the same part of the bus as the white passengers.

When the plaintiff refused to move, the driver called police officers who were compelled to use force to eject the plaintiff since she resisted and clung to her seat. After they had taken her from the vehicle, they attempted to take her to a police car but she again resisted and the officers then walked her some distance to the jail where she was charged with disorderly conduct and locked up. At the end of three hours she was allowed to deposit $20 in lieu of bail and released. She left Virginia shortly thereafter on another bus and did not return for her trial. During her struggles with the police officers, she lost a number of items of personal property, but there is no claim that the police officers used more force than was necessary to accomplish their purpose.

It is not disputed that all the seats in the bus with the exception of the rearmost seat are equally convenient and comfortable. In respect to that seat the evidence was conflicting, some of the witnesses claiming that it is not so comfortable, others, that it furnishes to passengers substantially the same accommodations as the other seats afford. This question was submitted to the jury by the judge in his instruction as to the right of the carrier to promulgate reasonable regulations and its duty not to discriminate between passengers on account of their race. He said:

" * * * If you believe that those rules and regulations adopted by the Defendant, Atlantic Greyhound Corporation, are reasonable and fair in their application; that under the rules substantially equal facilities and accommodations are extended members of both the white and colored race, then the rules and regulations are reasonable and enforceable. Of course, minor or trifling differences may appear, the accommodations do not have to be absolutely identical, but if they are substantially equal then the regulation and rules are valid and proper. If upon the other hand, in your opinion the facilities offered the plaintiff and members of her race * * * were unequal, * * * or were not substantially equal to those furnished white passengers, then the rules and regulations result in discrimination against members of the colored race, and should be declared invalid and unenforceable.

"Now, if you believe from the evidence that the rules and regulations result in discrimination against the plaintiff by reason of her race or color, your verdict should be for the plaintiff. If upon the other hand you believe that the rules and regulations shown in evidence are not discriminatory and that the plaintiff was afforded substantially equal facilities with those furnished other passengers, * * * if you believe that to be the case the bus driver under the circumstances here related had the right and he was required to enforce or carry out the rules and regulations and to designate the seat to be occupied by the various passengers, which included the plaintiff. * * * if you believe that they were non-discriminatory, the driver has the right to change passengers within reason, and under reasonable conditions designate their seats and to apply those rules in a reasonable common sense way and if a passenger refuses to conform with the requirements of the bus driver then it was the right of the bus driver and his responsibility to eject that passenger from the bus. He had the right to call to his assistance, if necessary, a police officer, one or more, for the purpose of ejecting the passenger, the plaintiff in this case, but he was not permitted to use more force than was reasonable and proper under all the circumstances, in ejecting the passenger. Before ejecting the passenger he should acquaint such passenger with the existence or terms of the rules and regulations and request conformity therewith, if, after having done so, the passenger refuses to comply as I said, then he has the right to have the passenger removed. He has no right to use any greater force than is reasonable and proper under all the circumstances existing."

In our opinion, this charge fairly presented the case to the determination of

the jury. We do not doubt that a regulation or course of conduct on the part of a carrier which involves the repeated shifting of seats by colored passengers would in itself amount to discriminatory treatment in deprivation of their just rights; but that is not the case before us. When the plaintiff was requested to move, the bus was empty except for herself, and the shift could have been made without substantial inconvenience either to the other passengers or to herself. The adoption of a reasonable regulation by an interstate carrier for the segregation of passengers does not violate the law as laid down by the Supreme Court; and in this case both the reasonableness of the regulation and the manner in which it was enforced were fairly submitted to the jury and determined against the plaintiff.

Affirmed.