## NASH v. AIR TERMINAL SERVICES, Inc., et al.

### Civ. A. No. 351.

United States District Court
E. D. Virginia, Alexandria Division.
Aug. 31, 1949.

546

William S. Thompson, Washington, D. C., James A. Washington, Jr., Washington,

D. C. and Edwin Brown, Alexandria, Va., for plaintiff.

Frederick J. Ball, Washington, D. C. and Thomas R. Dyson, Alexandria, Va., for defendant Air Terminal Services, Inc.

Gambrell, Harlan & Barwick, Atlanta, Ga. and Howard W. Smith, Jr., Alexandria, Va., for defendant Eastern Air Lines, Inc.

BRYAN, District Judge.

The plaintiff, a Negro citizen of the United States residing in the District of Columbia, here seeks to recover damages because she was refused service in the dining room and coffee shop at the Washington National Airport. She charges that the refusal was due solely to her race or color and avers a denial of her civil and constitutional rights. The defendants are Air Terminal Services, Inc., operator, as concessionaire of the United States Government, of all the restaurants at the airport, and Eastern Airlines, Inc., the air carrier on whose line she held a ticket for transportation. Defendants' motions to dismiss raise the issues. They contend that none of the six counts of the amended complaint sets forth a cause of action, because the defendants were under no obligation in law to serve the plaintiff or anyone else, that they could refuse to serve her without excuse, and that they have in no other manner deprived the plaintiff of her legal rights.

Washington National Airport is situated within the boundaries of the State of Virginia. With exceptions presently unimportant, Federal jurisdiction over the airport is exclusive. Acts of the General Assembly of Virginia of 1946, c. 26, p. 46; Public Law 208, 79th Congress, approved October 31, 1945, sec. 107, 59 Stat. 552, 553. The airport is owned by the United States and by an agreement dated February 19, 1941, the United States granted to the defendant Air Terminal Services, Inc., a Virginia corporation, the concession to operate, among other facilities there, "a dining room, coffee shop, soda fountain, employees' cafeteria, cafeteria for colored persons," for which the Government was to be paid a percentage of the concession's gross receipts.

Pursuant to this agreement Air Terminal Services, Inc. was operating several restaurants there on February 17, 1947, the date of the occurrences pleaded in this action.

On that day the plaintiff had purchased a ticket for transportation by the defendant Eastern Airlines, Inc., from the Washington Airport to New Orleans, Louisiana, Eastern being one of the lines licensed to enter and depart from the airport. With the plaintiff aboard, the plane took off but within a few minutes found it necessary to return to the airport because of mechanical difficulties. Announcement was made on the plane that upon disembarking each passenger should call at the desk of Eastern in the Terminal Building at the airport, for a chit entitling him to have dinner at the expense of Eastern at the airport or at any other convenient restaurant. Accordingly the plaintiff obtained a chit for her dinner. She presented it at the dining room operated by Air Terminal Services, Inc., in the Terminal Building, but she was refused service there because she was a Negro. She was also refused service at the coffee shop of Air Terminal Services for the same reason. She was told that she could be served only in the cafeteria provided for colored persons and operated by Air Terminal Services in the same building.

The agreement between the United States and Air Terminal Services requires that "provision for a separate cafeteria for colored persons shall also be made by the company". Article VII A(2). The same contract, Article VII G(10), stipulates that "the company shall comply at its own cost and expense with all Federal, State or local laws * * * now or hereafter in force, which may be applicable to the operation of its business at the Airport." "Food and beverages of good quality" must be offered "in the dining room, coffee shop, and soda fountain, employees' cafeteria and cafeteria for colored persons". Article VII A(1).

By statute in Virginia separation of white and colored persons is made the duty of every person operating "any place of public entertainment or public assemblage which is attended by both white and colored persons." Acts of the General As-

sembly of Virginia 1926, c. 569, pages 945, 946, Va.Code, sec. 1796a. The Assimilative Crimes Act, 18 U.S.C.A. § 13, formerly 18 U.S.Code 468, is specifically made applicable to the airport by Public Law 208, supra, thus constituting any act or omission occurring on the airport a Federal crime if it would have been a State crime in Virginia.

The incident of which the plaintiff complains arose at a time when segregation of the races was enforced at the airport by virtue of the instructions of the Administrator. As indicated by the quoted excerpts, segregation seems to have been contemplated by the concession-agreement between the United States and Air Terminal. Too, the Court is of the opinion that the Virginia statute already cited was then applicable to the restaurants and compelled under criminal penalties, the separation of the races. The latter became a requirement of the federal law prevailing on the airport, by virtue of the Assimilative Crimes Act, supra, and continued in force until the promulgation, on December 27, 1948, by the Administrator of Civil Aeronautics of his regulation expressing a different policy. See memorandum of this Court in civil action No. 394 entitled Air Terminal Servives, Inc. v. Rentzel, Administrator, D.C., 1949, 81 F.Supp. 611.

Therefore, on the date of the events here pleaded, segregation was mandatory at the airport. Failure of the defendant to enforce segregation would have subjected it to the penalties of the Assimilative Crimes Act and the regulations of the Administrator.

Five of the six counts are against Air Terminal Services, Inc., only, while Count III. is solely against Eastern and is the only count in the complaint against that defendant. All of the counts are predicated upon a denial of the rights of the plaintiff under the Fifth and Fourteenth Amendments to the Federal Constitution and under the Civil Rights Act, 8 U.S.C.A. §§ 41, 43. We consider first the case against Air Terminal.

Count I. lays constitutional and statutory invalidity to the instructions of the Administrator and the laws of Virginia (made applicable by the Assimilative Crimes Act) requiring segregation at the airport. Counts IV., V. and VI. adopt the allegations of Count I. with certain additions. Count IV. adds the averment that Air Terminal is engaged with Eastern in interstate air commerce by virtue of an agreement whereby Air Terminal furnishes food for the passengers of Eastern. At the argument it was stipulated that there was no formal contract of this kind, but only that Air Terminal agreed to honor tickets or chits issued by Eastern. Count V. alleges that such contract or agreement was for the benefit of the plaintiff, and Count VI. pleads the right of the plaintiff to sue as a beneficiary of the concession-agreement between the United States and Air Terminal. The added averments are for the purpose, it would seem, of showing the business of Air Terminal to be of a public and public-carrier nature, thereby to establish the obligation of the defendant to serve every customer. But Counts I., IV., V. and VI. present the same principal charge—the invalidity of segregation at the airport. On the other hand Count II. avers a cause of action for inequality of the "eating accommodations" furnished by Air Terminal for whites and Negroes, thus seeking a recovery even if segregation is held valid.

The Court is of the opinion that the motion to dismiss must be sustained in respect to all of the counts against Air Terminal Services, Inc. save Count II. pleading inequality in the accommodations.

Segregation is not violative of the Federal Constitution or of any act of Congress. Day v. Atlantic Greyhound Corporation, 4 Cir., 171 F.2d 59. The causes of action pleaded in Counts I., IV., V. and VI. hinge on the allegations that all segregation at the airport was invalid. As this premise is not tenable, these counts must be dismissed as not stating claims actionable in law.

However, in Count II. the plaintiff avers, as we have already mentioned, that Air Terminal Services, Inc. has failed to provide to its colored patrons eating accommodations substantially equal or equivalent to those offered to white patrons, and that, therefore, in refusing to serve the

plaintiff in the dining room or coffee shop, Air Terminal has deprived her, solely because of her race or color, of the rights and privileges guaranteed her under the Fifth and Fourteenth Amendments and under the Civil Rights Act. The defendants by their motion to dismiss admit the truth of the facts of this count.

The contention of Air Terminal is that it was not obligated in law to serve anyone, white or colored, and that it could without cause refuse service. Consequently, it argues, that in declining to serve the plaintiff it has violated no obligation to her.

■ Undoubtedly the position of the defendant is sound, under the decisional law of Virginia, in respect to restaurants operated by private citizens on private property. Alpaugh v. Wolverton, 184 Va. 943, 36 S.E.2d 906. But we do not believe the same principle of law is applicable to this defendant's restaurants at the Washington National Airport. They are operated on public property in a building constructed with public funds and under a concession from the public government. In effect, the concessionaire here is conducting the facility in the place and stead of the Federal government. To conclude otherwise would overlook not only the status and purpose of the airport, but also the purpose of the concession. It is to provide food and refreshment to the public in travel and to complement the facilities offered by the United States Government in support of air transportation. We do not hold that Air Terminal was an air carrier, or engaged in air transportation; we do hold its restaurants are too close, in origin and purpose, to the functions of the public government to allow them the right to refuse service without good cause. Cf. Lawrence v. Hancock, D.C.S.D. W.Va., 76 F.Supp. 1004.

■■ With segregation in effect at the airport, Air Terminal offended no constitutional or statutory precept in denying the plaintiff service in any restaurant save that established for the Negroes, but it did violate the plaintiff's constitutional rights if it did not furnish her there, eating accommodations substantially equal to those provided in the restaurants for whites. The impact here of the Constitutional Amendments is not barred by the doctrine that their safeguards apply only as between the State or Federal government and the citizen, rather than between citizen and citizen. The instant segregation was pursuant to a federal statute (the Assimilative Crimes Act) and under a federal executive's instructions, in effect governmental action, and unless provision was made for substantially equal accommodations to the plaintiff as a Negro citizen, she was deprived, by Air Terminal acting under the segregation laws and regulations of the United States, of her rights without due process of law, contrary to the Fifth Amendment of the Constitution of the United States. If so deprived, she has a cause of action for such damages as may have thereby been occasioned her; Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939; and she need not, as contended by the defendants, prove direct physical injury in order to recover damages. Nixon v. Herndon, 273 U.S. 536, 47 S.Ct. 446, 71 L.Ed. 759. Neither the Fourteenth Amendment nor the Civil Rights Act, 8 U.S.C.A. § 41 et seq., is relevant, because the segregation here was not State action or under color of a State law.

■ As we have previously indicated, the only count of the complaint against Eastern is No. III. In substance it posits the liability of Eastern Airlines. Inc. upon the ground that it sent the plaintiff to the dining room without warning her of the fact that she would be refused service. The other allegations of fact contained in the complaint readily disclose that such acts of Eastern on this occasion are too removed and too remote to be considered as causing, or contributing to cause, injury to the plaintiff. She was charged with notice and knowledge of the requirements of segregation. It cannot be gleaned from the complaint that Eastern was aware of any inequality in the accommodations. But if we assume that the plaintiff was not charged with knowledge of the separation of the races in the dining room or coffee shop, there still is nothing to show that Eastern was so connected with the occur-

rences as to constitute it a participant in the refusal of service to the plaintiff. The Court is of the opinion that the motion to dismiss should be sustained as to Count III.

An order will be entered sustaining the motion to dismiss in respect to all of the counts, except Count II., of the complaint, but overruling it as to Count II., the effect of which will be to give the plaintiff a trial by jury of her claim for damages for the alleged refusal of Air Terminal Services, Inc. to provide her eating accommodations at the Airport substantially equal to those furnished the white patrons.