## CHANCE v. LAMBETH et al.

### No. 6200.

United States Court of Appeals Fourth Circuit.

Argued Jan. 11, 1951.

Decided Jan. 27, 1951.

Martin A. Martin and Oliver W. Hill, Richmond, Va., (Spottswood W. Robinson, III, on brief), for appellant and cross-appellee.

Collins Denny, Jr., Richmond, Va., (J. M. Townsend, Petersburg, Va. and Denny, Valentine & Davenport, on brief), for appellee and cross-appellant.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This suit was brought by William C. Chance, a Negro, to recover damages from the Atlantic Coast Line Railroad Company on the ground that he was wrongfully ejected on account of his race from a railroad car on which he was an interstate passenger on June 25, 1948, and also on the ground that he was subjected to unlawful arrest and imprisonment in connection with his ejection from the car. Jurisdiction was based on diversity of citizenship. There was a judgment for the defendant on the first cause of action, and for the plaintiff on the second cause of action, and cross appeals.

Judgment was entered for the defendant on the first cause of action, since it was found that the regulation was lawful and reasonable by the jury to which the question was first submitted and later by the judge when he concluded that the question was one of law to be decided by him.

5. Oxman v. United States, 8 Cir., 148 F.2d 750, 752, 753.

Judgment was rendered for the plaintiff in the sum of $50 on the second cause of action under peculiar circumstances. The defendant moved for a directed verdict but was overruled; and the jury were instructed that if the plaintiff left the train peaceably, and arrest was not necessary to eject him, and if the Railroad Company caused the arrest, their verdict should be for the plaintiff. Specific questions were subsequently framed, one of which required the jury to say whether the defendant caused the wrongful arrest of the plaintiff. The jury were unable to agree on this matter and were relieved of further consideration thereof. Thereupon, at the request of the defendant, the jury were directed to find the damages suffered by the plaintiff by reason of his arrest, upon the assumption that he was wrongfully arrested at the instance of the defendant, and the jury found a verdict for $50. Thereafter the judge ruled that there was evidence tending to show that the defendant caused the arrest of the plaintiff and, being of the opinion that the arrest was unlawful, entered the judgment. It is conceded by the defendant that it stood upon its motion for directed verdict, and that the only question upon its appeal in this cause of action is whether the arrest was lawful.

Chance is a schoolteacher, 64 years of age. He had purchased from the defendant railroad company a round trip ticket from Rocky Mount, North Carolina, to Philadelphia, and on the day in question was on his return trip. He had journeyed by the Pennsylvania Railroad from Philadelphia to Washington and there changed cars and proceeded by the Richmond Fredricksburg and Potomac Railroad to Richmond, and thence by the Atlantic Coast Line Railroad, when the trouble arose. When the train left Washington it was composed of five baggage and express cars and eleven passenger cars, which included five coaches, a diner and five Pullman cars arranged in that order. Under the company's regulations, the three coaches first in line were designed for Negro passengers and the next two for white passengers. The three forward coaches were equal in accommodation and comfort to the two that followed. The three forward coaches were crowded when the train left Washington and Chance was directed by a trainman to go to the rear. He did so and found a seat in the last coach and deposited his baggage. During the ride from Washington to Richmond both white and colored persons occupied this coach, and there was no difficulty or disturbance.

At Richmond the trainmen segregated the passengers, directing white persons in the first three coaches to go to the rear and colored persons in the last two coaches to go forward. With the exception of Chance the passengers complied. He refused to move and was told that if he persisted he would be put off the train and the police would be called since the regulations of the company required segregation of the races. He was not ejected at Petersburg, the first station south of Richmond, but later at Emporia police officers, to whom word had been sent ahead, boarded the train and took him off when he was pointed out by the conductor. He offered no physical resistance, and there was no disorder or violence. When he was put off the train the conductor gave him back his ticket and he was taken by the police officers to the police station and charged with disorderly conduct. He gave bond after a detention of about forty minutes and completed his journey home by bus. A few days later he returned to Emporia at the appointed time for the hearing before the magistrate. The conductor of the train also appeared, withdrew the charges and paid the costs, acting upon the instructions of the Railroad Company.

The regulations of the company upon which the decision of the case turns were issued to the trainmen in the form of bulletins as follows:

"Rocky Mount, N. C., July 10, 1944
"Special Notice No. 4832
"All Concerned:
"Conductors must understand that every effort must be made to segregate the races as soon as possible after train leaves Richmond and to continue sending telegraphic

reports in each case where cars come to us from the R.F.&P. with the races mixed.

"R. G. Murchison,
*Superintendent.*"

"Rocky Mount, N. C., January 5, 1946.
41-11

"Special Notice No. 5671

"All Concerned:

"Recently due to the crowded condition of coaches, it may have been impossible for conductors to segregate the races on our line when trains received from the R.F.&P. at Richmond with coach passengers mixed, but now that the travel has slacked off and with the promise that 375 will be operated over the R.F.&P. properly pointed (not in reverse position), it is hoped that this condition can be corrected. Conductors must make every possible effort to separate the races as soon as conditions will permit enroute from Richmond to Florence.

"R. G. Murchison,
*Superintendent.*"

Testimony on behalf of the company indicated that the regulations were promulgated in accordance with the general sentiment of the community through which the railroad operates and usages and custom of the people, and that the purpose was to promote the comfort of the passengers and to preserve public peace and good order. Testimony on behalf of the plaintiff indicated that the practice of segregation in public conveyances in Virginia has been abandoned in large part by carriers since the decision of Morgan v. Virginia, 1946, 328 U.S. 373, 66 S.Ct. 1050, 90 L.Ed. 1317, without giving rise to violence or disorder.

It was also shown during the trial that there is no attempt to enforce segregation on cars of the Atlantic Coast Line while traveling by the R. F. & P. between Washington and Richmond, but when the train reaches Richmond the trainmen are instructed to enforce the regulation and to require white and colored passengers to move if they are not seated in the cars respectively assigned to them. However, if the cars are crowded in Virginia or elsewhere in the south, and there are not sufficient accommodations for all the passengers to get seats the trainmen sometimes "don't bother with them" until some of the passengers get off. In these instances the enforcement of the regulation depends upon the convenience of the Railroad Company. During the last war there were occasions when the regulation was not enforced.

Segregation is not enforced by the defendant railroad on Pullman or dining cars. Discrimination against colored passengers desiring Pullman seats or dining car service was held to violate the provisions as to equality of treatment contained in paragraph (1) of section 3 of the Interstate Commerce Act, 49 U.S.C.A. § 3(1), in Mitchell v. United States, 313 U.S. 80, 61 S.Ct. 873, 85 L.Ed. 1201, and Henderson v. United States, 339 U.S. 816, 70 S.Ct. 843. The carrier has not provided separate Pullman or dining cars for the two races.

The evidence does not show that violence or disorder has occurred where the carrier, to serve its own purposes, has relaxed the enforcement of segregation or has failed to apply it to certain classes of traffic.

The regulation and its enforcement in this case is attacked upon a number of grounds but we find it necessary to consider only one, namely, that it unlawfully burdens interstate commerce and is therefore repugnant to Clause 3 Section 8 of Article I of the Federal Constitution which empowers Congress to regulate commerce among the several states. Strong light has been thrown by decisions of the Supreme Court, some of recent date, upon the validity of state laws and railroad regulations which require the segregation of the races or discriminate between them in public conveyances in this country. In Hall v. DeCuir, 95 U.S. 485, 24 L.Ed. 547, the court held that a statute of Louisiana which required a carrier to give all persons traveling within the state upon public vehicles equal rights and privileges was an unconstitutional regulation of interstate commerce since otherwise each state would be at liberty to regulate the conduct of carriers while in its jurisdiction, resulting in great confusion and inconvenience, and destroying the uniformity necessary to the operation of the carrier's business.

The principle of this case was recently approved in Morgan v. Virginia, 328 U.S. 373, 66 S.Ct. 1050, 90 L.Ed. 1317, where the court held invalid as a burden upon interstate commerce a Virginia statute which required the separation of white and colored interstate passengers on motor vehicles moving in interstate commerce. Under the statute the person in charge of the vehicle was required to allot the available space according to the number of white and colored passengers and to require the passengers to change their seats from time to time, as might be necessary or proper to comply with the Act. The court said, 328 U.S. at pages 380–381, 386, 66 S.Ct. at page 1055:

"This statute is attacked on the ground that it imposes undue burdens on interstate commerce. It is said by the Court of Appeals to have been passed in the exercise of the state's police power to avoid friction between the races. But this Court pointed out years ago 'that a state cannot avoid the operation of this rule by simply invoking the convenient apologetics of the police power.' Burdens upon commerce are those actions of a state which directly 'impair the usefulness of its facilities for such traffic.' That impairment, we think, may arise from other causes than costs or long delays. A burden may arise from a state statute which requires interstate passengers to order their movements on the vehicle in accordance with local rather than national requirements.

"* * * As no state law can reach beyond its own border nor bar transportation of passengers across its boundaries, diverse seating requirements for the races in interstate journeys result. As there is no federal act dealing with the separation of races in interstate transportation, we must decide the validity of this Virginia statute on the challenge that it interferes with commerce, as a matter of balance between the exercise of the local police power and the need for national uniformity in the regulations for interstate travel. It seems clear to us that seating arrangements for the different races in interstate motor travel require a single, uniform rule to promote and protect national travel. Consequently, we hold the Virginia statute in controversy invalid."

These cases had to do with the effect of state segregation statutes; but as we have seen, carrier regulations or practices, as distinguished from state statutes which denied equality of treatment to the races were stricken down as violations of the Interstate Commerce Act in Mitchell v. United States and Henderson v. United States, supra. In the last mentioned cases the court did not reach certain constitutional questions suggested by the complainant, but in all the cases, whether the decision was based upon a violation of a provision of the constitution or of a statute of the United States, the problem under consideration was the standard of conduct to be observed by interstate carriers in dealing with members of the traveling public. Moreover, the ill effect upon the passengers and the disturbance of interstate traffic were much the same whether the carrier's conduct was treated technically as a denial of equal privileges to the races or as a burden upon interstate commerce. Thus, in the Mitchell case the complainant was excluded from a Pullman car and required to ride in a second class coach, and in the Henderson case the passenger was excluded from certain tables in the dining car and forced to wait until seats at other tables were vacant before he was served. The decisions which invalidated carrier regulations as contrary to the statute must therefore be considered in the instant case, although the regulation is here attacked as an undue burden upon commerce.

We reach the conclusion that the railroad regulation now before us must be declared invalid. Not only does its enforcement interfere with the uniformity which should characterize interstate carriage from one end of the route to the other, but its irregular enforcement for the convenience of the carrier, dependent upon the number of passengers and the character of accommodations which they purchase, adds to the burden upon the traffic by increasing the confusion and discomfort of the passengers. When white and colored passengers are permitted to ride together for part of their journey through the State of Virginia, and

then are compelled to separate and change cars, and when passengers in coaches are segregated on account of race while passengers in Pullman and dining cars are permitted to ride together irrespective of race, the burden upon interstate commerce is as clearly manifest as that imposed by the statute of Virginia which was invalidated in the Morgan case. It is true that the regulation of the carrier was not enacted by state authority, although the power of the state is customarily invoked to enforce it; but we know of no principle of law which requires the courts to strike down a state statute which interferes with interstate commerce but to uphold a railroad regulation which is infected with the same vice.

The Railroad Company emphasizes the decisions in Chiles v. Chesapeake & O. Ry. Co., 218 U.S. 71, 30 S.Ct. 667, 54 L.Ed. 936, and our own decision in Day v. Atlantic Greyhound Corp., 171 F.2d 59, rendered in the interval between the Morgan and Henderson decisions. In both cases the regulation of an interstate carrier segregating the passengers according to race was upheld; but they are not controlling here since in each case the passenger boarded the vehicle at a place where the rule of the carrier required segregation and he could have taken a seat and retained it to the end of his journey. The circumstances of the present case more nearly resemble those considered in Whiteside v. Southern Bus Lines, 6 Cir., 177 F.2d 949, with which we are in accord. In that case the court held invalid, as a burden upon interstate commerce the regulation of a bus company requiring colored people to be loaded in the rear of the bus in the course of an interstate journey. The decision was based largely on Hall v. DeCuir and Morgan v. Virginia, supra, as establishing the unreasonableness of the regulation and its interference with the uniformity essential for the functioning of interstate traffic; and the court also held that a burden upon interstate commerce may result from the activities of private persons as well as by the enactment of state laws.

The judgment of the District Court for the defendant in the first cause of action in the instant case must therefore be reversed, and the judgment against the defendant on the second cause of action must be set aside and a new trial granted, since the case was tried upon the erroneous theory that the regulation was valid, and the verdict of the jury was necessarily affected thereby. The costs on both appeals will be taxed against the Railroad Company.

Reversed and remanded.