WILLIAM H. BURTON,
Plaintiff,

vs.

WILMINGTON PARKING AUTHORITY, a body corporate and politic of the State of Delaware, and Eagle Coffee Shoppe, Inc., a corporation of the State of Delaware, Defendants.

*New Castle, April 15, 1959.*

*Louis L. Redding,* Wilmington, for plaintiff.

*Clair John Killoran* and *David Snellenburg, II,* Wilmington, for defendant Wilmington Parking Authority.

*Thomas Herlihy, Jr.,* Wilmington, for defendant Eagle Coffee Shoppe, Inc.

MARVEL, Vice Chancellor: Plaintiff, admittedly a person within the jurisdiction of the State of Delaware and a citizen, brings this class action for a declaratory judgment in the form of injunctive relief against the action of the defendant, Eagle Coffee Shoppe, Inc., a purveyor of foodstuffs and beverages, in refusing to serve him at its restaurant. It is admitted that plaintiff was refused service at such restaurant solely because he is a Negro, and all parties have moved for summary judgment on the basis that there is no material fact in dispute.

The Wilmington Parking Authority, which owns the space in which the Eagle Coffee Shoppe is located, is alleged to be an agency of the State and to have acquiesced in and consented to a discriminatory practice of the restaurant violative of the Fourteenth Amendment to the Constitution of the United States and is therefore joined as a defendant to this class action.

There is no doubt but that the Fourteenth Amendment forbids any state action which denies to any person within its jurisdiction the equal protection of the laws. However, the Parking Authority, while clearly a State agency, disclaims any control over the policies of its tenant, the restaurant. It contends that it has not purported to dictate to the restaurant as to how its business should be run and that the lease granted the Eagle Coffee Shoppe is a strictly business transaction between landlord and tenant, consummated as a corollary to the creation of rental space in the parking facility in question for the express purpose of defraying in large part the financing and operation of such a public facility.

Obviously, the Fourteenth Amendment plays no part in purely private acts of discrimination, its force coming into play when a state or one of its agencies or subdivisions fails to deal equally with any person within its jurisdiction.

In deciding whether or not discrimination violative of the Fourteenth Amendment has occurred, Courts make a determination as to whether or not the property involved in the action is in effect publicly owned, and if there is no clear showing of public ownership, whether or not state control is being exercised over a privately owned facility.

Thus, in *Eaton v. Board of Managers*, 4 *Cir.*, 261 *F.2d* 521, the fact that a hospital established pursuant to public law was succeeded by a privately built hospital operated by its own board, thereby removing the hosptal from the category of a publicly owned institution,[1] compelled a holding that Negro doctors did not have a constitutional right to insist that they not be barred from hospital staff

---

1. The only public moneys currently received by the hospital were paid by the County for the care of indigent patients.

status solely because of their race or color. Compare *Mitchell v. Boys Club, D.C.D.C.,* 157 *F.Supp.* 101, and *Kerr v. Enoch Pratt Free Library,* 4 *Cir.,* 149 *F.2d* 212.

On the other hand, when a Negro seeks rights in property owned by a state agency or by a state political sub-division, the device of a lease of such property to a concessionaire will not serve to insulate the public authority from the force and effect of the Fourteenth Amendment, *Lawrence v. Hancock, D.C.S.D.W.Va.,* 76 *Supp.* 1004, 1009 (a public swimming pool), and there would seem to be no valid basis for distinction when the leasing of space by a public authority is not a patent attempt at subterfuge but a good-faith method of furnishing service to the public through a tenancy, *Derrington v. Plummer,* 5 *Cir.,* 240 *F.2d* 922, *certiorari denied Casey v. Plummer,* 353 *U.S.* 924, 77 *S.Ct.* 680, 1 *L.Ed.2d* 719 (a restaurant in a county courthouse), and *Nash v. Air Terminal Services, Inc., D.C.E.D.Va.* 85 *F.Supp.* 545 (a restaurant in a federally owned airport and so subject to the Fifth Amendment).

■ Conversely, where there are no public moneys or property involved, discrimination may be constitutionally forbidden because of the existence of governmental control over the operation of a privately owned institution or facility, *Commonwealth of Pennsylvania v. Board of Directors of City Trusts,* 353 *U.S.* 230, 77 *S.Ct.* 806, 1 *L.Ed.2d* 792.

■ There is no doubt but that the Parking Authority is a tax exempt agency of the State engaged in furnishing public parking service in a facility, the financing of which is being borne in large part by rentals received from tenants occupying other parts of the building, *Wilmington Parking Authority v. Ranken,* 34 *Del.Ch.* 439, 105 *A.2d* 614. Because these rentals constitute a substantial and integral part of the means devised to finance a vital public facility, in my opinion it was incumbent on the Authority to negotiate and enter into leases such as the one here involved on terms which would require the tenant to carry out the Authority's constitutional duty not to deny to Delawareans the equal protection of the laws. To say that the Authority has no statutory power to operate the restaurant

itself is to beg the question in view of the direct relation of rental income to the financing of the facility.

 The lease here provides that the tenant " * * * shall occupy and use the leased premises in accordance with all applicable laws, statutes, ordinances and rules and regulations of any federal, state or municipal authority," and despite the Authority's disclaimer of control over the policies and practices of the Eagle Coffee Shoppe, I am satisfied that the Fourteenth Amendment to the Constitution of the United States is applicable to the operation of all aspects of the structure here involved, and that it forbids discriminatory practices in the restaurant in which plaintiff seeks to establish class rights.

Plaintiff is entitled to a declaratory judgment to such effect. In view of this holding it is unnecessary to consider the common law pertaining to innkeepers or defendants' reliance on § 1501 of *Title 24 Del.C.* as a purported modification of such common-law rule.

An appropriate order may be submitted denying defendants' motions and granting plaintiff's motion for a declaratory judgment as prayed for in the complaint.