## WHITESIDE v. SOUTHERN BUS LINES, Inc.

### No. 10799.

United States Court of Appeals
Sixth Circuit.

Nov. 23, 1949.

Martin A. Martin, Richmond Va., Robert L. Carter, New York City (Joseph S. Freeland, Paducah, Ky., Oliver W. Hill, Martin A. Martin, Spottswood W. Robinson, III, Richmond, Va., Robert L. Carter, Thurgood Marshall, New York City., on the brief), for appellant.

Henry O. Whitlow, Paducah, Ky. (Davis, Boehl, Viser & Marcus, Paducah, Ky., Waller, Threlkeld & Whitlow, Paducah, Ky., on the brief), for appellee.

Before HICKS, Chief Judge, and SIMONS and McALLISTER, Circuit Judges.

SIMONS, Circuit Judge.

The question here to be decided in our view narrows to this: Whether a regulation adopted by the appellee for the seating of passengers upon its buses when enforced against the appellant, while a passenger upon an interstate bus, because of her race and color, imposes an undue burden upon interstate commerce. If it does, the appellee was not immune from liability for ejecting the appellant from the vehicle when she refused to change her seat.

The basic facts are not in dispute. The appellant purchased a ticket from an agent of the appellee in St. Louis, Missouri, for transportation over its lines to Paducah, Kentucky, via Cairo, Illinois. From Cairo to the Kentucky line she occupied, without objection, a seat in the front part of the bus, but upon its arrival at Wickliffe, Kentucky, she was requested to move to another seat in the rear of the bus because she was a Negro. Upon her refusal to move, the bus operator procured the assistance of a police officer in Wickliffe and together they ejected her from the vehicle. Claiming that she had been severely injured and had lost articles of personal property, she sued the appellee for damages. The appellee admits that it is a common carrier engaged in transporting persons traveling in interstate commerce; that the appellant had a ticket entitling her to transportation from Cairo, Illinois, to Paducah, Kentucky; that its agent procured the services of a police officer in Wickliffe, and that the appellant was forcibly ejected from the bus because of her race and color. It alleged, however, that under its rules and regulations filed with the Interstate Commerce Commission and the Kentucky Division of Motor Transportation, the appellant was seated in a portion of the bus set aside for the exclusive use and occupancy of white persons, and that her refusal to move was the sole cause of her ejection. It claims as authority for its regulation, Rule 15(b) of its Rules and Regulations Tariff filed with the Interstate Commerce Commission in 1946, which states, "This company reserves to itself full control and discretion as to the seating of passengers and reserves the right to change such seating at any time during the trip."

The case was tried to the district judge without a jury and at the conclusion of the evidence he made findings of fact to the effect that the appellant had in force at Wickliffe, Kentucky, a rule requiring that colored passengers, including the plaintiff who was an interstate passenger, be loaded from the rear of its bus and white passengers from the front; that the rule had been orally communicated to the defendant's drivers, including the driver of the bus on which the plaintiff was riding; that this rule was one of general application and was well known to the traveling public; that it was reasonable and necessary for the safety, comfort and convenience of passengers and that the plaintiff was ejected pursuant to the rule without the use of excessive force. He concluded as a matter of law that the defendant had the right and duty to seat the passengers on its buses in pursuance of the rule and to eject the plaintiff who failed to abide by it. The complaint was thereupon dismissed and this appeal followed. It was argued here with ability and commendable restraint.

The appellant challenges the judgment on the ground that the segregation rule of the appellee was neither reasonable nor necessary for the safety, comfort and convenience of its passengers, and that the appellee had no legal or constitutional right to adopt or enforce it. She relies upon the Fifth and Fourteenth Amendments to the Constitution of the United States, upon the Commerce Clause, article 1, § 8, cl. 3, and the public policy of the United States evidenced in recent Supreme Court decisions. The appellee defends the judgment on the ground that as a common carrier of passengers for hire it was required to exercise the highest degree of care for their safety, comfort and convenience; that pursuant to this duty and in view of its observations and experiences in the community, the separate seating of white and colored passengers was both reasonable and necessary. It presented evidence, not controverted, that upon a number of occasions there had been

trouble upon its buses when the rule was not observed. It contends that racial segregation of interstate passengers is not forbidden by any provision of the Federal Constitution, the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., or any other Act of Congress so long as there is equality of accommodations for the different races.

The cases, federal and state, which deal with the authority of states to compel or prohibit the segregation of races in public places or upon the instrumentalities of transportation in consideration of the Fourteenth Amendment, are legion. No useful purpose will be served by their citation or analysis. It may be that in a period when the democratic way of life is challenged by another political and economic faith, the times invite a reappraisal of the scope of the Fourteenth Amendment to the end that in our effort to contain ideological concepts of government conflicting with our own (which have already, ostensibly at least, swept over half of Europe and great areas of Asia, calling for great expenditure of treasure and the possible expenditure of human life), local practices may more nearly conform to our democratic professions. If this is to be done, however, it must be by judicial authority superior to ours, for we conceive ourselves still constrained, in large measure, by the doctrine of stare decisis, however that doctrine may be denied its full impact upon highest authority in constitutional cases.

Nor do we permit ourselves to be persuaded to decision by consideration of cases which, though not dispositive of the present problem, may seem to indicate a new approach to the problem of the segregation of persons based upon race or color, such as Shelly v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161, 3 A.L.R.2d 441, and Hurd v. Hodge, 334 U.S. 24, 68 S.Ct. 847, 92 L. Ed. 1187 (the restrictive covenant cases), and Bob-Lo Excursion Co. v. Michigan, 333 U.S. 28, 68 S.Ct. 358, 92 L.Ed. 455. If Chiles v. Chesapeake & O. R. Co., 218 U.S. 71, 30 S.Ct. 667, 54 L.Ed. 936, 20 Ann.Cas. 980, and Plessy v. Ferguson, 163 U.S. 537, 16 S.Ct. 1138, 1147, 41 L.Ed. 256, are to be disregarded it may not be by us. If the observation of Mr. Justice Harlan, dissenting in the Plessy case, "The arbitrary separation of citizens, on the basis of race, while they are on a public highway, is a badge of servitude wholly inconsistent with the civil freedom and the equality before the law established by the constitution. * * * The thin disguise of 'equal' accommodations for passengers in railroad coaches will not mislead anyone * * *", will influence future adjudications as so much dissenting reasoning has, we are unable to say. We have upon occasion observed that we are not endowed with the gift of prophecy.

We confine ourselves, therefore, to the question whether the regulation of the appellee, as enforced by it upon the appellant while an interstate passenger under the asserted sanction or compulsion of Kentucky law, constitutes a burden upon interstate commerce, and in the narrow compass within which we may, with confidence, arrive at decision, we consider mainly two adjudications of the Supreme Court of the United States, both controlling upon us, namely, the early case of Hall v. DeCuir, 95 U.S. 485, 24 L.Ed. 547, and the comparatively recent case of Morgan v. Virginia, 328 U.S. 373, 66 S.Ct. 1050, 90 L.Ed. 1317, 165 A.L.R. 574, in the first of which a Louisiana statute inhibiting segregation and in the second a Virginia statute compelling it, were both declared invalid as constituting a burden upon interstate commerce, the regulation of which was entrusted solely to the Congress and so was beyond the power of the states to undertake, in the circumstances here involved.

The Morgan case, as the last adjudication bearing upon our specific problem, requires some analysis. There was there involved a Virginia statute which required all passenger motor vehicle carriers, both interstate and intrastate, to separate without discrimination the white and colored passengers in their motor buses, a violation of which by either the carrier or the passenger, constituted a misdemeanor. The regulations were applied to an interstate passenger who was a Negro traveling from Virginia to Baltimore, Maryland, and through the District of Columbia. Upon her refusal to accede to a request of the driver to move to a back seat, she was ar-

rested, tried and convicted. The Court of Appeals of Virginia, 184 Va. 24, 34 S.E.2d 491, affirmed but the Supreme Court of the United States reversed. It reasoned that there is a recognized abstract principle that state legislation is invalid if it unduly burdens commerce in matters where uniformity is necessary, and that where uniformity is essential for the functioning of commerce a state may not interpose its legislation. While the principle lacks precision and its quality is abstract, its application to a statute such as was there involved, is a burden upon commerce, and it is well-settled that even where Congress has not acted, state legislation or a final court order is invalid which materially affects interstate commerce because the Constitution puts the ultimate power to regulate commerce in Congress rather than in the states and the degree of state legislation interference may be weighed by federal courts to determine whether the burden makes the statute unconstitutional. Burdens upon commerce are those actions of the state which directly impair the usefulness of facilities for interstate traffic and may arise from a statute which requires interstate passengers to order their movements in accordance with local rather than national requirements. The court recognized that changes in seat designation upon interstate journeys may be disturbing, particularly when they are through territory where local regulations differ, and arrives at the conclusion that as a matter of balance between the exercise of local police power and the need for national uniformity, interstate motor travel requires a single uniform rule to promote and protect national travel. To the court's opinion by Mr. Justice Reed, concurred in by all but one of the sitting Justices, Mr. Justice Frankfurter adds the observation [328 U.S. 373, 66 S.Ct. 1059], "The imposition upon national systems of transportation of a crazy-quilt of State laws would operate to burden commerce unreasonably, whether such contradictory and confusing State laws concern racial commingling or racial segregation." Reliance is placed by the court upon Southern Pacific Co. v. Arizona, 325 U.S. 761, at page 769, 65 S.Ct. 1515, at page 1520, 89 L.Ed. 1915, where Mr. Chief Justice Stone observed that, "For a hundred years it has been accepted constitutional doctrine that the commerce clause, without the aid of Congressional legislation, thus affords some protection from state legislation inimical to the national commerce, and that in such cases, where Congress has not acted, this Court, and not the state legislature, is under the commerce clause the final arbiter of the competing demands of state and national interests."

It must be conceded that Kentucky has no statute compelling the segregation of races in either intrastate or interstate commerce such as the statute of Virginia held, in the Morgan case, to be inapplicable to interstate commerce. But the appellee relies upon long-settled usage and custom in Kentucky, crystallized into its unwritten law. Brumfield v. Consolidated Coach Corp., 240 Ky. 1, 40 S.W.2d 356, 365. That case follows and cites with approval an earlier decision, Ohio Valley Ry.'s Receiver v. Lander, 104 Ky. 431, 47 S.W. 344, 882, wherein it is said, "A common carrier of passengers for hire has the right, in the absence of a statute, to prescribe regulations for the separation of white and colored passengers, giving equal and like protection and accommodation to both." [240 Ky. 1, 40 S.W.2d 365.] We see no distinction in principle, when a regulation is sanctioned or required by state law, whether the law is declared by a legislature in a statute or by the highest court of the state in a decision, certainly since the Supreme Court declared in Erie R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, that such distinction is not a matter of federal concern, and in West v. American Tel. & Tel. Co., 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139, 132 A.L.R. 956, that it is the duty of the federal court in every case to ascertain from all the available data, what the state law is. In any event, the present appellee defends its regulation by the sanction not only of local custom, but of applicable Kentucky law.

We are aware that a number of district court decisions, notably Simmons v. Atlan-

tic Greyhound Corp., 75 F.Supp. 166, and Henderson v. Interstate Commerce Commission, 80 F.Supp. 32 (now on appeal to the United States Supreme Court), have undertaken to distinguish such situations as are here involved from the facts of the Morgan case by drawing a line between the action of a state in attempting to regulate the business of a carrier and the right of a carrier to operate its own business. Particularly interesting in this connection is the carefully developed reasoning of Judge Paul in the Simmons case. Conceding that the fact that Congress has refrained from acting in a field exclusively entrusted to it, gives no right to a state to enter this field, and that a regulation or custom deemed reasonable a generation ago may not necessarily be so at the present time, he sustains a regulation made by a motor carrier in Virginia on the ground that it has a reasonable basis, viewed in the light of the responsibility resting on such carriers, to assure that travel upon their conveyances shall, so far as possible, be free from disorder, disturbance or unpleasant incident. He points out, however, that in the Simmons case the plaintiff would not have been subjected to different rules or customs in the different states through which he traveled for he would have been confronted with the same rule in North Carolina which he met with in Virginia, and there was therefore no burden or inconvenience arising from meeting the varying customs of different states. If this distinction is controlling it removes the Simmons case from the rationalization of the Morgan case, and furnishes us with no precedent, for the appellant here boarded an interstate conveyance in Illinois which has neither statute, decision or custom sanctioning or requiring segregation based upon race or color. The requirement that she change her seat with all her accompanying impedimenta the moment she crossed the Kentucky line, was a breach of that uniformity which, under the Morgan case, is a test of the burden placed upon interstate commerce.

■ It must also be observed that acts burdening interstate commerce are not, like those inhibited in the Fourteenth Amendment, limited to state action. Burdens may result from the activities of private persons as the great mass of federal criminal legislation validated under the authority of the Commerce Clause, discloses. But if state action is a prerequisite to the invalidity of the regulation here considered as it was applied to the appellant, state action is clearly to be perceived in the ejection of the appellant by a state police officer.

The appellee argues that if the appellant has a grievance against the state or one of its agents, she may not, because of that, hold it liable for any injury she may have received or property she may have lost. This begs the question on two grounds. In the first place she was not ejected solely by the police officer. Her ejection from the bus was consummated by the joint efforts of the officer and the bus driver who concededly was the agent of the appellee acting within the conceded scope of his authority. Had the ejection of the appellant been by the police officer alone, without the aid of the bus driver, the appellee would have no better case, for its agent invoked the exercise of authority by which she was ejected, and while it is not now insisted, though originally alleged, that the appellant was actually arrested, it would seem by analogy to false arrest doctrine that the appellee would still be liable, for in the case of false arrest or imprisonment liability is imposed not only upon those who participate directly in the arrest but upon those who participate by indirect procurement. Director General of Railroads v. Kastenbaum, 263 U.S. 25, 27, 44 S.Ct. 52, 68 L.Ed. 146.

■ We indicate no view as to the reasonableness or necessity of the challenged regulation under conditions which exist in Kentucky, nor as to its validity under state law when applied to local traffic. We hold that as here applied to a passenger traveling on an interstate journey upon an interstate conveyance, it constitutes a burden upon interstate commerce and furnishes no immunity to the appellee for damages which may flow from its enforcement. We are not unmindful of the fact that the district judge sitting as a trier of the facts,

found that the ejection of the appellant was caused without the use of excessive force. While this may bear upon the question of damages it does not avoid liability.

Reversed and remanded to the district court for trial.